UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

```
-------------------------------------------x
In re ENRON CORPORATION SECURITIES
LITIGATION
-------------------------------------------

This Document Relates to:

MARK NEWBY, et al., Individually and On Behalf
of All Others Similarly Situated,                 Civil Action No. H-01-3624

                              Plaintiffs,

                   v.

ENRON CORP., et al.,

                              Defendants.

-------------------------------------------

This Document Relates to:

RAVENSWOOD CAPITAL-I, L.L.C., et al.,

                              Plaintiffs,          Civil Action No. H-04-4520

v.

CITIGROUP, INC., et al.,

                              Defendants.

-------------------------------------------x
```

**THE FINANCIAL INSTITUTIONS' MEMORANDUM OF LAW
IN OPPOSITION TO PLAINTIFFS' MOTION FOR LEAVE
TO FILE A SECOND AMENDED COMPLAINT (No. 55)**

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

TABLE OF AUTHORITIES ...................................................................................................ii

PRELIMINARY STATEMENT ............................................................................................1

FACTUAL BACKGROUND ................................................................................................3

ARGUMENT .........................................................................................................................6

PLAINTIFFS' MOTION FOR LEAVE TO FILE A SECOND AMENDED
COMPLAINT FAILS TO SATISFY THE "GOOD CAUSE" STANDARD
OF RULE 16(B) .....................................................................................................................6

     A.    The Ravenswood Plaintiffs Have Not Been Diligent .................................8

     B.    The Proposed Amendments Are Unimportant..........................................10

     C.    Allowing the Proposed Amendments Substantially Prejudices
           the Defendants ..........................................................................................13

CONCLUSION ....................................................................................................................14

## <u>TABLE OF AUTHORITIES</u>

**Page**

## <u>CASES</u>

Chitimacha Tribe of La. v. Harry L. Laws Co.,
690 F.2d 1157 (5th Cir. 1982) ........................................................................... 14

In re Enron Corp. Sec., Derivative & "ERISA" Litig.,
Civ. A. No. H-03-1558 (S.D. Tex. Dec. 13, 2007)......................................................... 6

Forman v. Davis,
371 U.S. 178 (1962) ................................................................................................ 14

Hibernia Nat'l Bank v. FDIC,
733 F.2d 1403 (10th Cir. 1984) .............................................................................. 11

Info-Power Int'l, Inc. v. Coldwater Tech., Inc.,
Civ. A. No. 07-0937P, 2008 U.S. Dist. LEXIS 107065 (S.D. Tex. Dec. 31, 2008) ...................... 8

Local 802, Associated Musicians of Greater N.Y. v. Parker Meridien Hotel,
145 F.3d 85 (2d Cir. 1998) .................................................................................... 7

Natwest USA Credit Corp. v. Alco Standard Corp.,
858 F. Supp. 401 (S.D.N.Y. 1994) ........................................................................... 11

Newby v. Enron Corp. (In re Enron Corp. Sec.,Derivative & "ERISA" Litig.),
MDL-1446, Civ. A. No. H-03-3508, 2007 U.S. Dist. LEXIS 4780
(S.D. Tex. Jan. 23, 2007)................................................................................. 6, 10

In re Okura & Co. (Am.)
249 B.R. 596 (Bankr. S.D.N.Y. 2000) ...................................................................... 11

Ordermann v. Unidentified Party,
Civ. A., No. 06-4796, 2008 U.S. Dist. LEXIS 19145 (E.D. La. Mar. 12, 2008) ...................... 8, 10

S&W Enters. L.L.C. v. Southtrust Bank of Ala., N.A.,
315 F.3d 533 (5th Cir. 2003).............................................................................. 7, 8

Southmark Corp. v. Schulte Roth & Zabel (In re Southmark Corp.),
88 F.3d 311 (5th Cir. 1996) ................................................................................ 14

Sw. Bell Tel. Co. v. City of El Paso,
346 F.3d 541 (5th Cir. 2003)................................................................................ 10

Sw. Intelecom, Inc. v. Compass Bank,
253 F. A'ppx 372 (5th Cir. 2007).......................................................................... 14

## **OTHER AUTHORITIES**

Lynnley Browning, <u>Deutsche Bank Said to Seek Settlement on Tax Shelters</u>,
N.Y. Times, Feb. 24, 2006, <u>available at</u> 2006 WLNR 3195492 ......................................................5

Lynnley Browning, <u>Legal Costs of Shelter Case Hurt Deutsche Bank Profit</u>,
N.Y. Times, Mar. 10, 2006, <u>available at</u> 2006 WLNR 4023358......................................................5

The Financial Institutions[1] (or "Defendants") respectfully submit this memorandum of law in opposition to the motion ("Motion" or "Mot.") of Ravenswood Capital-I, L.L.C., Ravenswood Capital-II, L.L.C., and Whitewood Holdings, L.L.C. (collectively, "Plaintiffs") for leave to file a Second Amended Complaint, dated February 28, 2011 (Docket No. 55).

## PRELIMINARY STATEMENT

Plaintiffs are a series of special purpose entities created by distressed debt investors that acquired, at deeply depressed prices, certain interests in the notes at issue in this litigation after Enron's December 2, 2001 bankruptcy filing. Based on distributions from the Enron estate and certain other recoveries, these notes have returned to Plaintiffs almost triple their post-bankruptcy cost, and therefore there are no losses to recover in this action. Nonetheless, Plaintiffs continue to pursue claims against the Financial Institutions, claims the actual owner of the notes at the time the action was filed, The Prudential Insurance Company ("Prudential"), declined to bring.

In the Motion, Plaintiffs request leave to file a Second Amended Complaint, which adds 200 pages and almost 500 allegations. This request comes over *five years* after the completion of fact and expert discovery, and over *four years* after Plaintiffs filed their First Amended Complaint. It also comes four years after briefing was completed on the dispositive motions to dismiss the First Amended Complaint. Plaintiffs do not explain this extraordinary delay, as required under Rule 16(b), which, indisputably, governs this Motion. Nor do Plaintiffs

---

[1] The "Financial Institutions" are JP Morgan Chase & Co., J.P. Morgan Securities Inc., JPMorgan Chase Bank, N.A., Merrill Lynch & Co., Merrill Lynch, Pierce, Fenner & Smith, Inc., Credit Suisse First Boston LLC (n/k/a Credit Suisse (USA), Inc.), Credit Suisse First Boston LLC (n/k/a Credit Suisse Securities (USA) LLC), Pershing LLC (f/k/a Donaldson, Lufkin & Jenrette Securities Corporation), and Deutsche Bank Securities Inc.

explain how the "new" evidence cures the standing and statute of limitations defects in the First Amended Complaint, as described in the pending motions to dismiss.

In an attempt to support their belated request, Plaintiffs cite (i) the September 28, 2006 Sworn Declaration of Andrew Fastow and the October-November 2006 deposition testimony of Andrew Fastow (together, the "Fastow Testimony"); and (ii) a Non Prosecution Agreement between Deutsche Bank and the United States Department of Justice (the "Deutsche Bank NPA").  Many of Plaintiffs' proposed amendments, however, are not based on this purportedly "newly" uncovered evidence, and could easily have been asserted in their First Amended Complaint based on the factual record developed during discovery.  Moreover, the "new" evidence Plaintiffs rely upon in bringing this Motion does not justify granting leave to Plaintiffs to further amend their pleading.

As an initial matter, neither the Fastow Testimony nor the Deutsche Bank NPA fairly can be characterized as "new" evidence.  The Fastow Testimony was completed on November 2, 2006—over *four years* before Plaintiffs filed this Motion.  Had Plaintiffs genuinely believed that the testimony saved their flawed claims, they undoubtedly would have raised it at some earlier point.  Similarly, the Deutsche Bank NPA introduces nothing new.  The conduct— which is wholly unrelated to Enron—and the investigation discussed in the Deutsche Bank NPA, were public information long before Plaintiffs even filed their First Amended Complaint in August, 2006.  Again, if it was relevant to Plaintiffs' claims, it could have been raised long ago.

Additionally, neither the Fastow Testimony nor the Deutsche Bank NPA is "important" under a Rule 16(b) analysis, as neither saves any of Plaintiffs' Texas Security Act ("TSA"), common law fraud, and civil conspiracy claims from dismissal.  In fact, the proposed Second Amended Complaint confirms that when Plaintiffs sued on November 30, 2004, they

lacked standing to bring any of the asserted claims.  Moreover, Plaintiffs allege (insufficiently) to

have received the right to bring this action through an assignment, but, as a matter of law, TSA

claims are not assignable.  Also, Plaintiffs were on inquiry notice of the Enron fraud by at least

November 29, 2001.  Thus, the three-year statute of limitations for their TSA claim and common

law fraud claim (assuming it was properly pled under Texas law) and the two-year statute of

limitations for their civil conspiracy claim all expired before they filed suit on November 30,

2004, and certainly did so before February 18, 2005, the earliest (as discussed below) Plaintiffs

could have acquired standing to bring this action.  Put simply, neither the Fastow Testimony nor

the Deutsche Bank NPA cure these fundamental and dispositive pleading defects, which are fully

briefed in the pending motions to dismiss.

   For these reasons, as explained in more detail below, Defendants should not be

put to the burden and expense of briefing new motions to dismiss the proposed Second Amended

Complaint, and the Motion should be denied.

## **FACTUAL BACKGROUND**

   On May 30, 2001, Prudential purchased $115,524,964 of two Enron Senior Notes

(the "Notes").  (Ravenswood Docket No. 38 (Declaration in Further Support of Defendants'

Motions to Dismiss), Exs. 1-2; proposed Second Amended Complaint ¶ 305.)  The cover of each

of the purchase agreements states in bold lettering that "This Note Agreement contains

restrictions on transfer (Section 2.05)."  Section 2.05 states that Prudential may not sell the

Notes, and all of the rights attached to them (including the right to bring this litigation), without

first offering to sell the Notes at the proposed price to Enron (the "Right of First Refusal").

(Ravenswood Docket No. 38, Exs. 1-2.))

Due to Enron's Right of First Refusal, on December 19, 2001, Bear Stearns and Prudential signed only a Participation Agreement under which Bear Stearns acquired a 100% "participation interest" in Prudential's Notes.  (Id., Exs. 4-5.)  Beginning the same day, Plaintiffs, single-purpose entities formed by The Baupost Group, L.L.C. ("Baupost") and King Street Capital, L.P. ("King Street"), distressed debt investors and sophisticated arbitrage players, acquired sub-participation interests from Bear Stearns.[2]  Specifically, on December 19, 2001, Baupost purchased a 56% sub-participation interest in the participation interest Bear Stearns owned.  (Id., Ex. 8.)  On December 21, 2001, Baupost bought an additional 22% sub-participation interest.  (Id., Ex. 9.)  On February 6, 2002, King Street purchased a 22% sub-participation interest from Bear Stearns.  (Id., Ex. 11.)  All of these purchases occurred after Enron was already in bankruptcy.  (Proposed Second Amended Complaint ¶¶ 318-320.)

Despite these transfers, Prudential was still the owner of record of the Notes when proofs of claim to the Enron estate were due almost a year later.  Accordingly, on October 10, 2002, Prudential, not Plaintiffs, filed the related proofs of claim, in which Prudential stated that it owned the Notes.  In re Enron Corp., Case No. 01-16034 (AJG) (Bankr. S.D.N.Y.) (Claim Nos. 8611 and 8621).  In November 2004, Plaintiffs asked Prudential, which was still the owner of the Notes, to bring this lawsuit.  Prudential refused.  (Ravenswood Docket No. 38, Ex. 13 (Wagner Tr. 198-202).)  Left with no choice, on November 30, 2004, as the last of the relevant statutes of limitation were expiring, Plaintiffs filed their original complaint, even though they were not the owner of the Notes.  (Ravenswood Docket No. 1.)

Subject to the Bankruptcy Court's approval, on December 2, 2004—after this lawsuit was filed—Enron agreed to waive its Right of First Refusal concerning the sale of the

---

[2]  Baupost and King Street created Plaintiffs just before this action was filed and transferred these rights to those entities in order to pursue claims against the Financial Institutions.

Notes.  (<u>Ravenswood</u> Docket No. 38, Ex. 3.)  Enron's waiver in this regard would not be effective for another 10 days.  Then, on January 11, 2005, Prudential "sold, assigned and transferred" the Notes to Bear Stearns, and, over one month later, on February 18, 2005, Bear Stearns assigned the Notes to Plaintiffs.  (<u>Ravenswood</u> Docket No. 23-1 (Declaration in Support of Defendants' Motion to Dismiss), Exs. 1-2.)  Thus, February 18, 2005 is the earliest that Plaintiffs may have had standing to bring this lawsuit.

On March 23, 2006, Deutsche Bank disclosed publicly that the Department of Justice was conducting a criminal investigation, involving Deutsche Bank, of tax-oriented transactions executed from 1997 through 2001.  Deutsche Bank, Securities and Exchange Commission Form 20-F (March 23, 2006), at 105.  The underlying facts and circumstances of the investigation had been publicly reported prior to Deutsche Bank's public filing.  <u>See</u>, <u>e.g.</u>, Lynnley Browning, <u>Legal Costs of Shelter Case Hurt Deutsche Bank Profit</u>, N.Y. Times, Mar. 10, 2006, section C, <u>available at</u> 2006 WLNR 4023358; Lynnley Browning, <u>Deutsche Bank Said to Seek Settlement on Tax Shelters</u>, N.Y. Times, Feb. 24, 2006, section C, <u>available at</u> 2006 WLNR 3195492.  The resolution of this investigation was memorialized in the Deutsche Bank NPA executed in December 2010.

On July 11, 2006, the July 2003 Scheduling Order (<u>Newby</u> Docket No. 4848, the "Scheduling Order") was amended to require, among other things, that plaintiffs in the coordinated cases (including this case) electing to amend their pleadings file their motions seeking leave to amend "within 30 days after filing their statement" of election.  (Scheduling Order at 3.)  On August 17, 2006—approximately nine months after the close of fact discovery—Plaintiffs filed their First Amended Complaint.  Defendants moved to dismiss the First Amended Complaint on September 18, 2006.

In October and November of 2006, Enron's former Chief Financial Officer, Andrew Fastow, was deposed pursuant to his agreement with Class Counsel and as part of his effort to reduce his criminal sentence.  Counsel for Plaintiffs was present and questioned Mr. Fastow extensively.  Following Mr. Fastow's deposition, on November 2, 2006, Plaintiffs filed their response to Defendants' motions to dismiss.  In that response, Plaintiffs sought "leave to amend their complaint to the extent necessary to assure that all references to 'Prudential' and 'Plaintiffs' are correct."  (Ravenswood Docket No. 28) (Proposed Order at 2).  There was no mention of the just completed Fastow deposition in Plaintiffs' response.  Defendants opposed that request (Ravenswood Docket No. 37), and briefing on the motions to dismiss was completed on February 12, 2007.

On January 28, 2009, Plaintiffs filed a motion for a status conference (Ravenswood Docket No. 47). This filing, likewise, did not mention the Fastow Testimony.  On February 28, 2011—over four years after Mr. Fastow's deposition—Plaintiffs filed this Motion seeking "to clarify facts and theories previously set forth in the First Amended Complaint" and to add the so-called "new" evidence.

## ARGUMENT

### PLAINTIFFS' MOTION FOR LEAVE TO FILE A SECOND AMENDED COMPLAINT FAILS TO SATISFY THE "GOOD CAUSE" STANDARD OF RULE 16(B).

This Court decided the issues presented by Plaintiffs' Motion (Mot. ¶¶ 10-13) three years ago, in two separate opinions.  In re Enron Corp. Sec., Derivative & "ERISA" Litig., Civ. A. No. H-03-1558 (S.D. Tex. Dec. 13, 2007) (CRRA Docket No. 584) (the "CRRA Order") (denying plaintiff's motion for leave to amend); see also Newby v. Enron Corp. (In re Enron Corp. Sec., Derivative & "ERISA" Litig.), MDL-1446, Civ. A. No. H-03-3508, 2007 U.S. Dist. LEXIS 4780, at *17-18 (S.D. Tex. Jan. 23, 2007) (granting defendants' motion to strike

plaintiff's first amended complaint, filed two months after the deadline for amendment as of right).

In the <u>CRRA</u> Order, for example, the Court held that, contrary to the arguments made in Plaintiffs' Motion (¶¶ 10-13), the "good cause" standard of Rule 16(b), not the "liberal" standard of Rule 15, applies to post-August 2006 motions for leave to amend in this MDL.[3]  The Court also held that in order to make the requisite showing of "good cause," a party seeking to extend the deadlines imposed by this Court's Scheduling Orders must "show that the deadlines cannot reasonably be met despite the diligence of the party needing the extension." (<u>CRRA</u> Order at 5-6 (quoting <u>S&W Enters.</u>, 315 F.3d at 535).)  Four factors are considered on Rule 16 motions: "(1) the reason(s) the party failed to move timely for leave to amend; (2) the importance of the amendment; (3) potential prejudice in permitting the amendment; and (4) the availability of a continuance to cure any prejudice." (<u>CRRA</u> Order at 6.)[4]

Plaintiffs' "good cause" explanation is set forth in paragraph 12 of the Motion:

> Here, Plaintiffs ***seek to clarify facts and theories previously set forth in their First Amended Complaint*** in response to Defendants' Motion to Dismiss.  As discussed in more detail below, evidence now exists that did not exist at the time Plaintiffs filed their First Amended Complaint, and Plaintiffs have previously requested leave to amend; Plaintiffs' request to amend is still pending.  Amending the complaint is essential to the just resolution of Plaintiffs' claims, as Plaintiffs allege additional facts in support of their claims which would clearly withstand Defendants' Motion to Dismiss.

(Mot. ¶ 12 (emphasis supplied).)  Plaintiffs' explanation falls woefully short of meeting the Rule 16 standard.  As an initial matter, many of Plaintiffs' proposed amendments are not, in fact, based

---

[3]  It is well established in this Circuit that Rule 16(b) governs amendment of pleadings after a deadline set by a scheduling order has expired.  <u>S&W Enters. L.L.C. v. Southtrust Bank of Ala. N.A.</u>, 315 F.3d 533, 536 (5th Cir. 2003).

[4]  Plaintiffs cite misleadingly to <u>Local 802, Associated Musicians of Greater New York v. Parker Meridien Hotel</u>, 145 F.3d 85, 89-90 (2d Cir. 1998), as support for their argument that they should be given leave to amend at this late juncture.  (Mot. ¶ 15.)  In <u>Associated Musicians</u> defendants numbered the paragraphs of their answer incorrectly, resulting in unintentional admissions.  The defendant was given leave to correct these obvious typographical errors.

on any "new" evidence.  If Plaintiffs believed they were material to their claims, they could have

easily been included as allegations in Plaintiffs' First Amended Complaint based on the factual

record developed during discovery.

Moreover, just as the Court concluded that CRRA failed to demonstrate good

cause for the tardiness of its motion for leave to amend because there was "no evidence of

diligence," CRRA Order 6, Plaintiffs here offer no reason why allegations based on the Fastow

Testimony and the conduct discussed in the Deutsche Bank NPA could not have been raised

much sooner.  See also Info-Power Int'l, Inc. v. Coldwater Tech., Inc., Civ. A. No. 07-0937P,

2008 U.S. Dist. LEXIS 107065, at *7 (S.D. Tex. Dec. 31, 2008) (citing S&W Enters., 315 F.3d

at 535) ("the primary focus" of Rule 16 analysis "is on diligence").  Nor do Plaintiffs explain to

the Court how this so-called "new" evidence cures the standing and statute of limitations issues

requiring dismissal of Plaintiffs' claims.  As such, there simply is no reason to burden

Defendants (and the Court) by requiring Defendants to prepare new motions to dismiss directed

at the proposed Second Amended Complaint, which has been expanded needlessly by 200 pages

and 473 paragraphs.  (See, e.g., CRRA Order 6-7.)

A.      **The Ravenswood Plaintiffs Have Not Been Diligent.**

The Motion should be denied because the Ravenswood Plaintiffs have been far

from diligent, as whatever changes they would like to make to their complaint could have been

made years ago.  As this Court said in denying CRRA's similar motion, the Ravenswood

Plaintiffs have "had years to plead [their] claims, and . . . this case is too far advanced to allow

amendments." (CRRA Order at 7); see also Ordermann v. Unidentified Party,  Civ. A. No. 06-

4796, 2008 U.S. Dist. LEXIS 19145, at *6-7 (E.D. La. Mar. 12, 2008) (affirming magistrate

judge's denial of leave to amend and noting that plaintiffs were not diligent, despite their

purported "interest in refining their complaint" in light of the court's substantive ruling, as they "inexplicably delayed for months").

The deposition of Andrew Fastow was completed on November 2, 2006. There is absolutely no reason why this supposedly "new" evidence could not have been raised at some earlier point during the past four years. Plaintiffs attempt to excuse their lack of diligence by claiming that they did not seek leave to file their amended pleading earlier because they misunderstood the limits of the Court's July 2003 Scheduling Order. (Mot. ¶ 13.) Plaintiffs, however, offer no explanation, much less a plausible one, as to how or why they misinterpreted the terms of the July 2003 Scheduling Order or what led Plaintiffs to conclude that an amended pleading would now be appropriate.

Plaintiffs also reference misleadingly a pending request for leave to amend. (Mot. ¶ 13.) Plaintiffs are referring to their response to Defendants' motions to dismiss in which they ask the Court to allow them to "re-plead as needed to correct erroneous references to 'Plaintiffs'" made in their First Amended Complaint. (Ravenswood Docket No. 28 at 12.) That "motion"— which was not a motion at all—was filed on November 2, 2006, the day that Mr. Fastow's deposition concluded. And yet, it had no mention of the need to amend based on the Fastow Testimony.

Finally, Plaintiffs claim vaguely to have "sought . . . guidance" from the Court "on these issues" when they requested a status conference in January, 2009. (Mot. ¶ 13.) When Plaintiffs made that request for a status conference, however, Plaintiffs did not even suggest they were considering an amendment of their pleadings, let alone an amendment based on the evidence they now cite. (Ravenswood Docket No. 47 (January 28, 2009 Motion for Status

Conference).)  On the contrary, Plaintiffs expressed confidence that they already had stated cognizable claims.

Because Plaintiffs clearly have failed to exercise proper diligence by seeking leave to assert these "new" allegations during the four-year period prior to filing this Motion, the Motion should be denied.

**B.    The Proposed Amendments Are Unimportant.**

Even if Plaintiffs' lack of diligence was not a sufficient ground to deny their motion—which it is—Plaintiffs' motion still should be denied because the proposed amendments do nothing to cure the many defects in Plaintiffs' claims and are therefore "futile" and not "important" within the meaning of Rule 16(b) analysis.  See Sw. Bell Tel. Co. v. City of El Paso, 346 F.3d 541, 546 (5th Cir. 2003) ("importance of the amendment" is one factor to consider in determining whether "good cause" standard has been met); In re Enron Corp., 2007 U.S. Dist. LEXIS 4780, at *16-17 (concurring with defendant's arguments that, inter alia, likelihood of failure supports denying amendment); see also Ordemann, 2008 U.S. Dist. Lexis 19145, at *7 (holding a futile proposed amendment was unimportant within the meaning of a Rule 16 analysis).

As an initial matter, Plaintiffs state that they merely "seek to ***clarify*** facts and theories previously set forth in their First Amended Complaint in response to Defendants' Motion to Dismiss."  (Mot. ¶ 12 (emphasis supplied).)  Such an explanation is plainly insufficient under Rule 16(b).  The time to have ensured that their claims were clear (and viable) was in August 2006, when amended pleadings were due under the Court's Scheduling Order. Rule 16 does not allow parties to edit or clarify a complaint in order to better respond to already-filed motions to dismiss.

In any event, the Fastow Testimony and Deutsche Bank NPA, regardless of their content, do not impact at all, let alone cure, the standing and statute of limitation defects of the First Amended Complaint for multiple reasons.  First, the proposed amendments cannot cure the fact that all potential limitations periods expired by the time Plaintiffs acquired standing to bring claims against Defendants. For this reason, alone, further amendment would serve no useful purpose, and the Court should dismiss the now-operative First Amended Complaint.

As Plaintiffs admit in the proposed Second Amended Complaint (¶¶ 318-320), when Plaintiffs first brought their claims on November 30, 2004, they were only "participants" (as opposed to owners), meaning they possessed only an indirect participation interest in whatever "proceeds" associated with the Notes were received by Prudential, the legal owner of the Notes.  (Ravenswood Docket No. 37 (Reply in Further Support of Defendants' Motion to Dismiss) at 9, and No. 45 (Defendants' Opposition to Plaintiffs' Objection and Sur-Reply on Defendants' Motion to Dismiss) at 4-5.)  In other words, Plaintiffs' rights associated with the Notes, including the right to bring these claims, were derived from (and flowed through) Prudential.  As mere participants, Plaintiffs had no independent litigation rights, and Plaintiffs' remedies at the time they brought suit were limited to claims against Prudential.  Hibernia Nat'l Bank v. FDIC, 733 F.2d 1403, 1407 (10th Cir. 1984); Natwest USA Credit Corp. v. Alco Standard Corp., 858 F. Supp. 401, 407-08 (S.D.N.Y. 1994); In re Okura & Co. (Am.), 249 B.R. 596 (Bankr. S.D.N.Y. 2000).  Indeed, if the sub-participation agreements had given Plaintiffs full title to the Notes (or any interest therein), Enron would have exercised its Right of First Refusal, depriving Plaintiffs of the extraordinary return on their investment they achieved in the Bankruptcy proceeding, a profit that Plaintiffs now coyly refer to as their "losses."

Recognizing Plaintiffs' limited and purely derivative rights, in October 2002, it was Prudential that filed the necessary proofs of claim for the Notes in the Enron bankruptcy court, not Plaintiffs.  In re Enron Corp., Case No. 01-16034 (AJG) (Bankr. S.D.N.Y.) (Claim Nos. 8611 and 8621).  Moreover, aware that they had no right to bring this litigation in their own name, Plaintiffs first attempted (unsuccessfully) to persuade Prudential to bring these claims. (Ravenswood Docket No. 38, Ex. 13.)  If the December 19, 2001, sub-participation agreement identified in the proposed Second Amended Complaint (¶¶ 318-320) gave Plaintiffs full title to the Notes, Plaintiffs could have filed the proofs of claim, and there would have been no need to ask Prudential to bring this lawsuit.  It was only when Plaintiffs perceived a statute of limitations deadline that they chose to gloss over this fatal legal defect and file suit on November 30, 2004.

But the earliest date on which Plaintiffs could have acquired standing was February 18, 2005, which was well after the limitations periods had expired.  (Ravenswood Docket No. 23 at 9-10.)  After Enron's waiver of its Right of First Refusal became effective, Prudential passed legal title to Bear Stearns, Plaintiffs' counter-party in the sub-participation agreement, on January 11, 2005.  (Docket No. 23-1, Exs. 1-2.)  Bear Stearns executed a similar transfer to Plaintiffs on February 18, 2005.  (Id.)  It was no earlier than February 18, 2005, that Plaintiffs acquired the right to bring these claims against the Financial Institutions—well over three years after the world had "inquiry notice" of "fraud" at Enron.  None of Plaintiffs' proposed amendments can change this fact, which is dispositive of this entire action.

Second, regardless of the timing of any purported assignment, the proposed amendments do not provide any reason why the TSA claim should not be dismissed. (Ravenswood Docket No. 23 at 11-14, and No. 37 at 15-18.)  This is so because, as a matter of law, TSA claims cannot be assigned.  (Id.)

Third, the limitations periods for the TSA, common law fraud, and civil conspiracy claims had all expired by November 30, 2004, when Plaintiffs purported to initiate this action.  When Enron officially restated its financials on November 8, 2001, Enron disclosed that its prior financials were inaccurate.  (Ravenswood Docket No. 20 (First Am. Compl.) ¶ 75.) Further, as this Court has recognized, Enron bond prices were falling throughout October and November of 2001, leading to Enron's December 2, 2001 bankruptcy filing.  June 5, 2006 Opinion and Order re Class Certification (Docket No. 4735) at 162-63.  Given this backdrop, Prudential was indisputably on "inquiry" notice of a fraud at Enron as of November 29, 2001, meaning that the three-year limitations periods for TSA and common law fraud claims already expired by November 30, 2004, when Plaintiffs (with no standing) purported to commence this action, and the two-year statute of limitations period for civil conspiracy had expired a whole year before that.  Moreover, Plaintiffs themselves even concede that the limitations period likely commenced by December 2, 2001.  (Ravenswood Docket No. 28 at 30).  Since Plaintiffs did not acquire standing to bring this action until (at the earliest) February 18, 2005, Plaintiffs' attempt to push back the accrual date for their claims does not save them from dismissal.

Plaintiffs' proposed amendments cannot cure any of the aforementioned standing and limitations defects and are therefore futile and unimportant.  Thus, the Court should reject the proposed Second Amended Complaint, and, for the reasons stated herein and in Defendants' previous briefing, dismiss the First Amended Complaint with prejudice.

### C.    Allowing the Proposed Amendments Substantially Prejudices the Defendants.

The Financial Institutions already have devoted substantial time and expense to the fully briefed motions to dismiss Plaintiffs' First Amended Complaint.  If Plaintiffs are permitted to file their proposed Second Amended Complaint, with its additional 200-pages and

almost 500 new allegations, that process would have to be repeated at considerable cost and time

to Defendants and this Court.  The prospect of drafting new motions to dismiss directed at the

proposed Second Amended Complaint is especially burdensome and unwarranted given

Plaintiffs' extraordinary delay in seeking to make these amendments, and the fact that none even

impacts, let alone cures, the pleading defects in the First Amended Complaint.[5]

## CONCLUSION

For the foregoing reasons, this Court should deny the Ravenswood Plaintiffs'

request for leave to file a Second Amended Complaint.

Dated:  Houston, Texas
          March 21, 2011

Respectfully submitted,

By: /s/ Eric D. Wade
     Eric D. Wade
     State Bar No. 00794902
     Daniel K. Hedges
     State Bar No. 09369500
     PORTER HEDGES LLP
     1000 Main Street, 36th Floor
     Houston, Texas 77002
     Telephone: (713) 226-6000
     Facsimile: (713) 226-6255

---

[5] Even under the more liberal Rule 15(a) standard—which does not apply here—the Motion would fail.  In considering whether to grant leave under Rule 15(a), a court should "consider judicial economy and whether the amendments would lead to expeditious disposition of the merits of the litigation," Chitimacha Tribe of Louisiana v. Harry L. Laws Co., 690 F.2d 1157, 1163 (5th Cir. 1982), and "may consider such factors as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, and futility of amendment," Southmark Corp. v. Schulte Roth & Zabel (In re Southmark Corp.), 88 F.3d 311, 314-15 & n.13 (5th Cir. 1996) (citing Forman v. Davis, 371 U.S. 178, 182 (1962)).  The Fifth Circuit has noted repeatedly that leave to amend under Rule 15 need not be granted where there has been an apparent lack of diligence.  See, e.g., Sw. Intelecom, Inc. v. Compass Bank, 253 F. App'x 372, 375-76 (5th Cir. 2007).  Plaintiffs' lack of diligence, the undue prejudice that amendment would pose to Defendants, and the futility of the proposed amendments, would require denial of the Motion even under Rule 15.

OF COUNSEL:

Lawrence Byrne
Lance Croffoot-Suede
Ruth E. Harlow
Joseph B. Schmit
LINKLATERS LLP
1345 Avenue of the Americas
New York, New York 10105
Telephone: (212) 903-9000
Facsimile: (212) 903-9100

**ATTORNEYS FOR DEFENDANT
DEUTSCHE BANK SECURITIES INC.**

By: /s/ Lawrence D. Finder
    Lawrence D. Finder
    Texas Bar No. 07007200
    Odean L. Volker
    Texas Bar No. 20607715
    HAYNES AND BOONE, LLP
    1 Houston Center
    1221 McKinney, Suite 2100
    Houston, Texas 77010
    Telephone: (713) 547-2000
    Facsimile: (713) 547-2600

OF COUNSEL:

Richard W. Clary
Julie A. North
Darin P. McAtee
CRAVATH, SWAINE & MOORE LLP
Worldwide Plaza
825 Eighth Avenue
New York, New York 10019-7475
Telephone: (212) 474-1000
Facsimile: (212) 474-3700

**ATTORNEYS FOR DEFENDANTS
CREDIT SUISSE FIRST BOSTON
(USA), INC. (N/K/A CREDIT SUISSE
(USA), INC.), CREDIT SUISSE FIRST
BOSTON L.L.C. (N/K/A CREDIT
SUISSE SECURITIES (USA) L.L.C.),
AND PERSHING L.L.C. (F/K/A
DONALDSON, LUFKIN & JENRETTE
SECURITIES CORP.)**

By: /s/ Richard Warren Mithoff
Richard Warren Mithoff
Attorney-in-Charge
Texas Bar No. 14228500
S.D. Tex. Bar No. 2102
MITHOFF LAW FIRM
One Allen Center, Penthouse
500 Dallas Street, Suite 3450
Houston, Texas 77002
Telephone: (713) 654-1122
Facsimile: (713) 739-8085

OF COUNSEL:

Thomas C. Rice
David J. Woll
Jonathan K. Youngwood
SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, New York 10017-3954
Telephone: (212) 455-2000
Facsimile: (212) 455-2502

Charles A. Gall
Texas Bar No. 07281500
S.D. Tex. Bar No. 11017
James W. Bowen
Texas Bar No. 02723305
S.D. Tex. Bar No. 16337
HUNTON & WILLIAMS LLP
1445 Ross Ave., Suite 3700
Telephone: (214) 468-3300
Facsimile: (214) 468-3599

**ATTORNEYS FOR DEFENDANT
JPMORGAN CHASE & COMPANY**

By: /s/ David J. Beck

David J. Beck
Texas Bar No. 00000070
BECK, REDDEN & SECREST, L.L.P.
Federal ID No. 919
One Houston Center
1221 McKinney Street
Suite 4500
Houston, Texas 77010-2010
Telephone: (713) 951-3700
Facsimile: (713) 951-3720

OF COUNSEL:

Stuart J. Baskin
Herbert S. Washer
Adam S. Hakki
SHEARMAN & STERLING LLP
599 Lexington Avenue
New York, New York 10022
Telephone: (212) 848-4000
Facsimile: (212) 848-7179

**ATTORNEYS FOR DEFENDANTS
MERRILL LYNCH & CO., INC. AND
MERRILL LYNCH, PIERCE, FENNER
& SMITH INCORPORATED**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 21st day of March, 2011, a true and correct copy of the

foregoing was served on all counsel of record through the Southern District of Texas CM/ECF

electronic filing system.

<u>/s/ Joseph B. Schmit</u>
Joseph B. Schmit