UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| In re ENRON CORPORATION SECURITIES LITIGATION | |
| This Document Relates to: | |
| MARK NEWBY, et al., Individually and On Behalf of All Others Similarly Situated, | Civil Action No. H-01-3624 |
| Plaintiffs, | |
| v. | |
| ENRON CORP., et al., | |
| Defendants. | |
| This Document Relates to: | |
| RAVENSWOOD CAPITAL- L.L.C., et al., | |
| Plaintiffs, | Civil Action No. H-04-4520 |
| v. | |
| CITIGROUP, INC., et al., | |
| Defendants. | |

**DEUTSCHE BANK'S REPLY MEMORANDUM OF LAW
IN SUPPORT OF MOTION FOR
ATTORNEYS' FEES UNDER 28 U.S.C. § 1927**

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ........................................................................................................... ii

PRELIMINARY STATEMENT AND SUMMARY ...................................................................... 1

ARGUMENT .................................................................................................................................. 4

I.       GREER HERZ OFFERS NO LEGAL SUPPORT IT IN FACT RELIED UPON FOR
         THE PERSISTENT AND ERRONEOUS ASSERTION DURING THIS
         LITIGATION THAT PLAINTIFFS HAD STANDING IN NOVEMBER 2004 .............. 4

         A.       Plaintiffs' Counsel Offer No Legal Authority Actually Relied Upon In
                  2004 ....................................................................................................................... 5

         B.       Plaintiffs' Counsel Still Distort The Unambiguous Participation
                  Contracts ................................................................................................................ 7

II.      PLAINTIFFS' COUNSEL NEVER INVOKED DUBUQUE OR THE
         ARGUMENT THAT AN INITIAL LACK OF STANDING COULD BE
         CORRECTED LATER, BECAUSE PLAINTIFFS NEEDED STANDING
         FROM THE OUTSET TO ATTEMPT TO MEET THE TSA'S LIMITATIONS
         PERIOD .............................................................................................................................. 8

III.     THIS MOTION RESTS ON WELL-FOUNDED CONCLUSIONS
         PREVIOUSLY REACHED BY THE COURT AFTER FULL REVIEW OF
         THE CASE HISTORY ...................................................................................................... 12

IV.      THE MOTION COMPLIES WITH ALL PROCEDURAL
         REQUIREMENTS ............................................................................................................ 16

CONCLUSION ............................................................................................................................. 18

i

## TABLE OF AUTHORITIES

**Page**

### CASES

Browning v. Kramer,
931 F.2d 340 (5th Cir. 1991) ........................................................................................... 4

Day v. Amoco Chems. Corp.,
595 F. Supp. 1120 (S.D. Tex. 1984) ................................................................................. 4

Decorative Ctr. of Houston, L.P. v. Direct Response Publ'ns, Inc.,
264 F. Supp. 2d 535 (S.D. Tex. 2003) ........................................................................ 11, 12

Dubuque Stone Prods. Co. v. Fred L. Gray Co.,
356 F.2d 718 (8th Cir. 1966) .......................................................................... 2, 10, 11, 12

Lehman Brothers Holdings, Inc. v. Cornerstone Mortg. Co.,
No. H-09-0672, 2011 WL 649139 (S.D. Tex. Feb. 10, 2011) .................................... 11, 12

Lewis v. Brown & Root, Inc.,
711 F.2d 1287 (5th Cir. 1983) ........................................................................................ 14

Ratliff v. Stewart,
508 F.3d 225 (5th Cir. 2007) .......................................................................................... 17

Riopelle v. Reid,
No. H-09-2318, 2010 WL 1996534 (S. D. Tex. May 2010) ............................................ 15

In re Silica Prods. Liab. Litig.,
398 F. Supp. 2d 563 (S.D. Tex. 2005) ................................................................... 4, 14, 15

Steinert v. Winn Grp., Inc.,
440 F.3d 1214 (10th Cir. 2006) ...................................................................................... 17

TXCAT v. Phoenix Grp. Metals, LLC,
No. H-10-0344, 2010 WL 5186824 (S.D. Tex. Dec. 14, 2010) ................................... 15, 17

In re Taxable Mun. Bond Sec. Litig., No. MDL 863,
No. MDL 863, 1994 WL 34924 (E.D. La. Feb. 3, 1994), aff'd,
51 F.3d 518 (5th Cir. 1995) .............................................................................................. 4

Topalian v. Ehrman,
3 F.3d 931 (5th Cir. 1993) .............................................................................................. 16

Travelers Inc. Co. v. St. Jude Hosp. of Kenner, La., Inc.,
38 F.3d 1414 (5th Cir. 1994) ..................................................................................... 15, 16

Wieburg v. GTE Sw. Inc.,
272 F.3d 302 (5th Cir. 2001) .................................................................................................2, 7, 11

## STATUTES & RULES

28 U.S.C. § 1927 ...................................................................................................................Passim

Fed. R. Civ. P. 54(d)(2)(E) ........................................................................................................17

2716679v1

Deutsche Bank AG, Deutsche Bank Securities Inc., and Deutsche Bank Trust Company Americas (collectively "Deutsche Bank") respectfully submit this reply memorandum of law in support of their motion for attorneys' fees, expenses, and costs under 28 U.S.C. § 1927 ("Section 1927") and/or the Court's inherent powers.

## PRELIMINARY STATEMENT AND SUMMARY

Deutsche Bank addresses here the numerous unsupported assertions and red herrings offered by new counsel for Plaintiffs in opposition to Deutsche Bank's motion for fees and costs as sanctions. This motion rests on a seven-year history of the arguments made and actions taken by Plaintiffs' original counsel in this matter – a history that cannot be re-written at this point and with which the Court is well familiar.

Plaintiffs' opposition baldly claims that "Plaintiffs' counsel conducted legal and factual research and determined that Plaintiffs had good support in both law and fact to assert their claims" in November 2004 based on their sub-participant status in regard to the Enron Notes at issue here. Response in Opposition to Deutsche Bank's Motion for Attorneys' Fees Under 28 U.S.C. § 1927 ("Opp.") [Dkt. No. 68] at 8. But nowhere in Plaintiffs' opposition brief or the short supporting affidavits filed with it is <u>any</u> case or <u>any</u> other legal source identified as the purportedly "good" legal authority – for proceeding solely with sub-participant Plaintiffs to file claims that still belonged exclusively to Prudential, the noteholder and lender to Enron – that was found before suit by Plaintiffs' Counsel,[1] Greer, Herz & Adams L.L.P. The inability of Plaintiffs' Counsel to name any legal authority that it relied upon in November 2004 speaks volumes about the lack of legal support for Counsel's maneuver.

---

[1]     Capitalized terms are used in this reply brief consistently with their use in Deutsche Bank's opening brief.

Because Plaintiffs have no such previously-identified "good support" for their standing in November 2004 to offer, Plaintiffs' new counsel now tries to somehow fashion a long-after-the-fact justification from <u>Dubuque Stone Products Co. v. Fred L. Gray Co.</u>, 356 F.2d 718 (8th Cir. 1966). In spinning this new argument after a final dismissal, Plaintiffs fail to admit to the Court that they never cited <u>Dubuque</u> in any of their half dozen briefs filed in this litigation, never even made arguments suggested by <u>Dubuque</u>, and would not have been helped by <u>Dubuque</u> even if they had done so. As shown in more detail below, Plaintiffs misrepresent the Court's own citation to <u>Dubuque</u> in one footnote of its thorough and balanced dismissal decision, and cannot find any kind of "good faith" shield from <u>Dubuque</u> or cases following it.

None of those cases dealt with knowingly filing a case early, without standing, in a transparent attempt to avoid a statute of limitations bar, as Plaintiffs did here, Op. at 37-38. Indeed, Plaintiffs' conduct in this case created the very kind of prejudice to defendants that <u>Dubuque</u> and its progeny do not countenance, and exclude from their recognition of some post-filing assignments. Moreover, as this Court held, the governing rule in the Fifth Circuit was articulated in <u>Wieburg v. GTE Southwest Inc.</u>, 272 F.3d 302 (5th Cir. 2001), not <u>Dubuque</u>. The <u>Wieburg</u> decision and its progeny make clear that a post-filing correction of a plaintiff's initial lack of standing is appropriate in circumstances of honest and understandable mistake, but not more broadly. Thus, under either the Fifth Circuit's rule in <u>Wieburg</u> or the Eighth Circuit's approach in <u>Dubuque</u>, Plaintiffs and their counsel cannot justify their premature, tactical filing to try to save a cause of action they knew they did not yet possess. It was not at all an "unsettled" matter that Plaintiffs' strategy should fail, but instead was abundantly clear under the law that Plaintiffs' Counsel chose to ignore. <u>Cf</u>. Opp. at 12-13.

As the Court emphasized in its dismissal decision,

2

> In this litigation Plaintiffs brought claims they knew they had no right to bring. … Thus they did not make an honest or "understandable mistake" under Rule 17 that the Court should allow to be remedied subsequently. … In filing the instant action when at most they had a sub-participation interest, not an ownership interest, Plaintiffs knowingly asserted the legal rights still belonging to Prudential in order to avoid the statute of limitations bar. … Moreover, it is impermissible for a party not the real person in interest to file suit to avoid the statute of limitations.

Op. at 37-38 (citations omitted). These findings are not mere "assertions" by Deutsche Bank, as Plaintiffs' new counsel tries to pretend, Opp. at 9, but are conclusions reached by the Court after exhaustive and careful consideration of all the parties' respective filings.

Plaintiffs concede that they did not appeal from or seek reconsideration of any part of the Court's ruling. Opp. at 15 n.45. At this point, Plaintiffs cannot successfully distance themselves from the Court's conclusions about what occurred in the long litigation of this matter. In fact, Plaintiffs' opposition only underscores that Plaintiffs and Plaintiffs' Counsel proceeded with full awareness of the operative agreements to file suit for entities that each knew held only sub-participation interests. See, e.g., Opp. at 8 (counsel brought suit based on "the participation and sub-participation agreements in the Notes").

Finally, all of the supposed procedural roadblocks to this motion thrown up by Plaintiffs' Counsel quickly crumble when examined. Deutsche Bank's motion is properly grounded in Section 1927, complies with any Federal Rules of Civil Procedure or local rules that actually apply to it, and appropriately splits the Court's consideration of liability from its calculation of an award. Deutsche Bank has brought this motion in the most efficient fashion possible to avoid any further unnecessary burden on the parties or the Court. It was not apparent until Plaintiffs' opposition that Plaintiffs and Plaintiffs' Counsel would defend against the motion in an all-or-nothing fashion, instead of attempting to justify certain filings and actions but not others. Once the Court makes a ruling on liability under Section 1927 or its inherent powers, and sets any

3

parameters for the proof of fees and costs that it will entertain, see, e.g., In re Silica Products Liability Litig., 398 F. Supp. 2d 563, 567-68, 678-79 (S.D. Tex. 2005), Deutsche Bank will provide full documentation of its reasonably incurred fees and expenses, and Plaintiffs and Plaintiffs' Counsel will have a corresponding opportunity to argue about the amount of any award.

## ARGUMENT

As established in Deutsche Bank's initial brief, Section 1927 provides the basis for requiring plaintiff's counsel to reimburse a defendant for all of its attorneys' fees and expenses in combatting a suit that was "unreasonably instigated" and litigated without adequate foundation from the outset. Day v. Amoco Chems. Corp., 595 F. Supp. 1120, 1123 (S.D. Tex. 1984); see also Browning v. Kramer, 931 F.2d 340, 345 (5th Cir. 1991) (when "the entire course of proceedings were unwarranted and should neither have been commenced nor persisted in," the entire financial burden imposed on the adverse party can appropriately be awarded) (citation omitted); Deutsche Bank's Memorandum of Law in support of Motion for Attorneys' Fees Under 28 U.S.C. § 1927 ("DB 1927 Mem.") at 4, 10-16. That result is especially just when recklessness or an improper purpose is not merely inferred from such unwarranted claims, see In re Taxable Mun. Bond Sec. Litig., No. MDL 863, 1994 WL 34924, at *3 (E.D. La. Feb. 3, 1994), aff'd, 51 F.3d 518 (5th Cir. 1995), but instead is manifest from the explicit arguments and tactics of plaintiff's counsel, as here. See Op. at 37-38; DB 1927 Mem. at 11-20.

## I.   GREER HERZ OFFERS NO LEGAL SUPPORT IT IN FACT RELIED UPON FOR THE PERSISTENT AND ERRONEOUS ASSERTION DURING THIS LITIGATION THAT PLAINTIFFS HAD STANDING IN NOVEMBER 2004

From the start of this litigation in 2004 to the finish in 2011, Plaintiffs' Counsel at Greer Herz consistently contended in pleadings and argued in briefs to this Court that Plaintiffs

4

possessed legal standing to sue by the moment of the case's initial filing on November 30, 2004. See, e.g., Plaintiffs' Response to [Joint] Motion to Dismiss [Dkt. No. 28] at 8, 12 ("Defendants' dubious contentions that Plaintiffs fail to adequately plead ownership of the Notes and that Plaintiffs therefore lack standing, are without merit"); Plaintiffs' Objection and Sur-Reply to Defendants' Reply Briefs [Dkt. No. 43] at 6 (arguing that "Plaintiffs Had Standing When This Suit Commenced" and that the participation and sub-participation agreements "confirm that Plaintiffs had standing to bring this action when it was filed"); see also Op. at 19.

As this Court concluded, however, the operative agreements relied on by Plaintiffs were unambiguous. Op. at 20. The terms of those agreements spelled out at length that Plaintiffs held only "sub-participation interests," not ownership interests, in the Notes at the time of suit and thus that they did not hold the substantive rights they sought to enforce through their claims. Op. at 25-32. Under well-established law, the nature of Plaintiffs' contractual interests showed that they lacked standing in November 2004. Op. at 20-32. The Court specifically found that "Plaintiffs misrepresent the nature and substance of the Participation and Sub-Participation Agreements that they maintain transferred all of Prudential's interest to them." Op. at 22; see also id. at 20 ("The distinction between an assignment and a participation agreement is critical here, but obfuscated by Plaintiffs.").

### A.  Plaintiffs' Counsel Offer No Legal Authority Actually Relied Upon In 2004

In opposing Deutsche Bank's Section 1927 motion for attorneys' fees and expenses, Plaintiffs' Counsel offer no specifics about their contemporaneous thinking that might show some purported "good faith" legal basis when they filed the Complaint, or as this litigation progressed, for ignoring the plain language and import of the agreements upon which Plaintiffs explicitly relied as their critical premise for suit. Instead, when referring to their actual analysis

during this case, Plaintiffs' Counsel merely pepper their filings with the phrase "good faith" and with conclusory allusions to "legal research," Opp. at 2, 8, to again try to obscure what was a knowing and improper decision to file suit without the necessary standing to do so. Plaintiffs' Counsel offer <u>no legal foundation whatsoever</u> that they had identified, either before or at the time of each filing here, for their persistent and vexatious arguments throughout this litigation that standing existed from the moment of the initial Complaint.[2]

Contrary to Plaintiffs' post-hoc rhetoric, this was not a case where a party "predicate[d] its claim on an unsettled legal theory." Opp. at 12. There was nothing ambiguous or unsettled about Plaintiffs' contractual rights or the legal requirements for standing. Op. at 20-32. Tellingly, Plaintiffs' Counsel make no real effort now to show otherwise – and instead argue as if Plaintiffs had advanced arguments that they never raised and that would not have helped them if they had, see infra Point II. In opposition to Deutsche Bank's motion, Counsel provides no evidence of any actual legal predicates that they relied upon for their repeated filings asserting that Plaintiffs' standing existed <u>from the outset</u>; repeated filings that first flew in the face of Plaintiffs' own agreements (and Prudential's public filings) and that then ridiculed defendants' motion papers when they raised the standing issue and provided those agreements and filings to the Court.

---

[2]      The Affidavit of Andrew J. Mytelka dated March 2, 2012 ("Mytelka Aff."), for example, states that "GHA attorneys researched the ability of Plaintiffs to bring an action against Defendants and held meetings where Plaintiffs' standing was discussed," but provides no specifics on the research, on the discussions, or on any conclusions reached before suit. Mytelka ¶ 7. In the next paragraph, Mr. Mytelka retreats from any mention of standing, and in a convoluted assertion – again without any specifics that might show an actual legal foundation – states: "Based upon legal and factual research conducted, both I and attorneys at my firm concluded that Plaintiffs had a right to bring suit under the Notes, and that the assignment of Note 'title' was not necessary when the right to bring this action (as well as 100% of the underlying rights associated with the Notes) had been effectively purchased and paid for three years prior." Id. ¶ 8. This merely reiterates Mr. Mytelka's effort to read ambiguity into the unambiguous participation and sub-participation agreements, and does so without any particulars that could conceivably show a good faith legal basis for that convoluted misreading – whether in its baseless concept of "effectively purchased," in its false assertion that assignment was not necessary, or otherwise.

### B.     Plaintiffs' Counsel Still Distort The Unambiguous Participation Contracts

Similarly, Plaintiffs' Counsel only reinforce the appropriateness of Section 1927 (or inherent powers) sanctions in their opposition brief's discussion of the participation agreements and the nature of Plaintiffs' interests when they first filed suit. Opp. at 18-19. Even after this Court's final dismissal ruling has fully exposed the lack of factual foundation for their contentions, Plaintiffs' Counsel persist now in asserting that the governing agreements and other evidence "show[] Plaintiffs were the real parties in interest when the lawsuit commenced." Opp. at 18. The Court ruled exactly to the contrary, emphasizing that "[t]he real party in interest is the person holding the substantive right sought to be enforced," here Prudential at the time the lawsuit commenced, "and not necessarily the person who will ultimately benefit from the recovery." Op. at 31-32 (quoting Wieburg v. GTE Southwest Inc., 272 F.3d 302, 306 (5th Cir. 2001)).

Plaintiffs' Counsel still attempt to obscure or minimize the difference between sub-participation interests in the Notes, and the ownership interests that Plaintiffs eventually gained through assignment in February 2005, just as they obscured these facts in their complaints and briefs over the seven years prior to dismissal. See Op. at 20 (the "distinction between an assignment and a participation agreement is critical here, but obfuscated by Plaintiffs").[3]  In

---

[3]      Plaintiffs' Counsel argue that "[i]n everyone's minds" "Prudential did not retain rights in the Notes," but ignore the clear contrary provisions in the governing agreements and themselves admit that it was Prudential that needed to act in the bankruptcy court. Opp. at 19 & n.49. Moreover, if "in everyone's minds" Prudential were correctly understood to retain no real rights and were merely acting to serve Plaintiffs, Plaintiffs could simply have directed Prudential to file suit – but of course Prudential declined to file suit and Plaintiffs were left to their own devices. "Everyone's minds" certainly did not include Enron or the Bankruptcy Court, to whom Prudential had just explicitly represented (i) that it had not assigned "any or all of its interests in the Proofs of Claim" relating to the Notes and (ii) that it had sold only "certain of its interest" in the Notes pursuant to the Participation Agreements. Schmit Aff. [Dkt. No. 38], Ex.3.

Plaintiffs' Counsel mischaracterize the multiple steps between sub-participation and gaining an ownership interest in the Notes as "ministerial," Opp. at 7, again ignoring the governing agreements themselves and the admitted history of a more substantive and uncertain assignment process, Opp. at 6.  A bankruptcy court's consideration of and decision about whether to approve a debtor's waiver of a valuable right of first refusal, and the accompanying

7

addition, Plaintiffs' opposition falsely argues as if the Court based its ruling on a general "overview of participation agreements," Opp. at 19, rather than on the specifics of Plaintiffs' own agreements – which the dismissal decision in fact references and relies upon at length, Op. at 22-31. Blatantly side-stepping the actual history of Plaintiffs' relationship to the Notes and of this litigation does nothing to assist Plaintiffs or Plaintiffs' Counsel in trying to show that they have conducted the litigation without unnecessarily multiplying its scope and without recklessness or an improper purpose. Instead it indicates the opposite, for Plaintiffs and Plaintiffs' Counsel are again wasting defendants' and this Court's time with mischaracterizations of the unambiguous facts and with straw men,[4] and offering no substantive legal support.

## II.    PLAINTIFFS' COUNSEL NEVER INVOKED <u>DUBUQUE</u> OR THE ARGUMENT THAT AN INITIAL LACK OF STANDING COULD BE CORRECTED LATER, BECAUSE PLAINTIFFS NEEDED STANDING FROM THE OUTSET TO ATTEMPT TO MEET THE TSA'S LIMITATIONS PERIOD

For the full seven years of this case, Plaintiffs' Counsel never wavered from their erroneous assertion that Plaintiffs had standing on November 30, 2004. Nor did Plaintiffs' Counsel ever argue that if they had erred, and there was no standing in November 2004, that

---

settlement of a counterparty's (here Prudential's) claims in bankruptcy, is not a ministerial act, but plainly one of judgment that cannot be taken for granted. <u>See</u> Opp. at 6 (citing Debtors' Seventh Omnibus Motion for Approval of Compromise and Settlement of Claims); Schmit Aff. [Dkt. No. 38], Ex. 3 (Order Granting the Debtors' Seventh Omnibus Motion).

And Plaintiffs' Counsel further mislead in their current use of the phrase "perfecting title," Opp. at 2, 7, for Plaintiffs had no title at all prior to February 2005 and title could pass only after the non-ministerial decisions that Enron and the bankruptcy court eventually made. This matter in no way concerns real estate or security interests, or any other context where the technical concept of "perfection" might apply.

[4]    Plaintiffs' Counsel not only fights a straw man but turns Deutsche Bank's motion on its head by arguing that "Deutsche Bank's Motion does not accuse Plaintiffs of failing to provide evidence" in discovery and by (falsely) asserting "no dispute" about the existence of "substantive evidentiary support for the factual contentions in the pleadings." Opp. at 19. A core point of Deutsche Bank's motion is that <u>there were no "factual contentions in the pleadings" related to standing</u>. Plaintiffs' Counsel did their best to keep any reference to Plaintiffs' mere sub-participation interests out of the Complaint, the Amended Complaint, and all of its subsequent filings, in the hopes of hiding Plaintiffs' lack of standing from the Court, evading the statute of limitations, and manufacturing settlement pressure for as long as possible. DB 1927 Mem. at 1-20. Nor is Deutsche Bank's motion about the "interpretation of undisputed facts." Opp. at 19. Deutsche Bank's motion rests on the utter lack of legal support for Plaintiffs' standing to file suit in November 2004, and Plaintiffs' Counsel's persistence in asserting and arguing otherwise.

error could be cured, without prejudice to any of the defendants, by taking into account later developments. This uniform litigation posture that asserted standing from the outset – as discussed above, a posture unfounded in the governing agreements or in standing law – arose from and was essential to Plaintiffs' Counsel's improper attempt to evade the Texas Securities Act ("TSA") limitations period.

By November 2004 the two-year statute of limitations for a Texas conspiracy-to-defraud cause of action had already expired. On that count, Plaintiffs' Counsel improbably argued to this federal Court that a "change to the [Texas] two-year statute of limitations commonly applied to causes of action for civil conspiracy to commit fraud is long overdue." Plaintiffs' Response to Defendants' [Joint] Motion to Dismiss [Dkt. No. 28] at 36. With regard to Plaintiffs' TSA claim, however, Plaintiffs' Counsel argued that filing suit on November 30, 2004, fell within the limitations period, because the three-year limitations period under the TSA "commenced no earlier than December 2, 2001." Id. at 30.[5] Thus, Plaintiffs' Counsel's own arguments reveal that they could delay no longer, and that they rushed to file to at least try to satisfy the three-year deadline.

As this Court has already concluded, after full review of the litigation history, "Plaintiffs knowingly asserted the legal rights still belonging to Prudential in order to avoid the statute of limitations bar." Op. at 38. Plaintiffs' new counsel fails to address that finding at all. Instead, Plaintiffs' opposition brief offers an inapposite citation to an Enron federal securities law

---

[5]     Texas law is clear that the TSA limitations period runs from the date of discovery of injury, and does not require that a plaintiff have notice of the identity of the alleged wrongdoer by that date. Mem. of Law in Support of Defendants' Motion to Dismiss [Dkt. No. 23] at 16 (citing cases). Thus, the TSA limitations rule works differently than limitations calculations under federal securities law. Defendants in this case eventually argued that Enron's alleged deception of note purchasers like Prudential, the injury that purportedly created Plaintiffs' TSA claim, was known even before November 30, 2004. Id. But Plaintiffs viewed December 2, 2001, as the critical date for discovery of the injury and filed just two days before December 2, 2004, to try to meet that deadline and save their TSA claim. Plaintiffs' Response to Defendants' [Joint] Motion to Dismiss [Dkt. No. 28] at 30.

limitations ruling, Opp. at 9, and then argues as if the TSA statute of limitations were irrelevant here – when the Court has instead found it central in explaining the trajectory of this case.

Building on that willful blindness to the statute of limitations backdrop, Plaintiffs' opposition brief further strays from the substance of the Court's now-binding dismissal ruling by claiming that "the Court has acknowledged" that Dubuque Stone Products Co. v. Fred L. Gray Co., 356 F.2d 718 (8th Cir. 1966) and cases decided under it "would have allowed this case to proceed."  Opp. at 8; see also id. at 22.  The Court's decision contains no such "acknowledgement," nor could it on these facts.  This Court, based upon its own research, referred to Dubuque only in one footnote that discusses the appropriate standard to apply under Rule 17.  Op. at 35-36 n.21.  In the course of canvassing law in the various circuits, the Court notes that the Eighth Circuit in Dubuque held that a post-filing assignment could allow a plaintiff to proceed if "the defendant is not prejudiced," whereas the Fifth Circuit's standard requires an "understandable mistake" before initial suit on behalf of the wrong plaintiff might be cured.  Op. at 33-36 & n.21.  The Court then follows the Fifth Circuit standard rather than the Eighth Circuit's rule, and never applies or considers the Dubuque rule in the context of the particulars of this case.  Id.

Incredibly, Plaintiffs' Counsel now offers Dubuque as the stand-alone centerpiece of their opposition to sanctions, despite (a) the fact that Plaintiffs never cited or relied upon Dubuque at any point during their pre-dismissal litigation of this case; (b) the fact that Plaintiffs never even made the argument, perhaps suggested by Dubuque, that an initial filing without standing could somehow be remedied subsequently (and without prejudice to defendants); and (c) the clear inapplicability of that line of reasoning to this case, because excusing the initial lack of standing here would have greatly prejudiced defendants by resurrecting a TSA cause of action that

10

properly should have been forever barred.  Dubuque is irrelevant to this motion, and certainly does not "demonstrate[] that Plaintiffs' claims were well grounded in existing law at the time of filing,"  cf. Opp. at 14.  Indeed, in addition to all of the factual flaws in that notion,  Dubuque was not even the "existing law" that governed in this Circuit – Wieburg was.

In Dubuque, the Gray Company did not initiate its suit without standing or based on claims for which it was not the real party in interest, see 356 F.2d at 724, as Plaintiffs did here. Nor did Gray face any statute of limitations issues.  Instead, Dubuque dealt with whether Gray could add a second cause of action to its case – which had been properly initiated with Gray's own, initial cause of action – after the assignment of the second cause of action from an insurer. The assignment of that second claim occurred after Gray's initial claim was filed, but before trial, and created no prejudice to the defendant Dubuque Stone Products Company.  Id. at 719-720, 723-724.  The defendant Dubuque argued, however, that even after the assignment, the cause of action still belonged to the insurer.  Id. at 723.  Dubuque presented the straightforward issue of whether the assignment made Gray, after that assignment had been effected, the real party in interest.  Id.  The Eighth Circuit ruled that it did.

Like Dubuque, the two district court decisions cited by Plaintiffs' Counsel that followed that ruling also involved circumstances of no prejudice to the defendants.  See Decorative Center of Houston, L.P. v. Direct Response Publications, Inc., 264 F. Supp. 2d 535, 544 (S.D. Tex. 2003) (noting no prejudice to Direct arising from the timing of the assignment); Lehman Brothers Holdings, Inc. v. Cornerstone Mortgage Co., No. H-09-0672, 2011 WL 649139, at *11

11

(S.D. Tex. Feb. 10, 2011) (finding no argument of any prejudice and emphasizing that <u>Dubuque</u> applies only where "there is no unfair prejudice").[6]

None of the <u>Dubuque</u> line of cases purports to stand for the proposition that a subsequent assignment can <u>retroactively</u> cure lack of standing and thus allow a plaintiff to avoid a statute of limitations bar that would otherwise have prevented the claim.  Plaintiffs' Counsel did not rely on <u>Dubuque</u> in litigating Plaintiffs' claims, because <u>Dubuque</u> cannot somehow manufacture standing for Plaintiffs as of November 2004. Nor can <u>Dubuque</u> now justify Plaintiffs' Counsel's actions in filing suit months before any actual ownership of their claim, in  an impermissible attempt to beat the limitations deadline.  The great prejudice that such a maneuver would work is obvious.

## III.   THIS MOTION RESTS ON WELL-FOUNDED CONCLUSIONS PREVIOUSLY REACHED BY THE COURT AFTER FULL REVIEW OF THE CASE HISTORY

Inexplicably, Plaintiffs' Counsel accuses Deutsche Bank of bringing a "groundless" motion with "no evidence of nefarious behavior," Opp. at 9-10, 13, when this Court itself has already found that improper behavior occurred.  It is not a mere accusation of Deutsche Bank, <u>cf.</u> Opp. at 10, but a conclusion of the Court, that Plaintiffs' Counsel "obfuscated" the critical distinction between Plaintiffs' participation agreements and an actual assignment.  Op. at 20. Likewise, it is the Court that has found "Plaintiffs brought claims they knew they had no right to bring" and that Plaintiffs' Counsel did not make an "understandable mistake" in filing those non-existent claims.  <u>Id</u>. at 37-38.[7]  Most importantly, the Court has identified at least one improper

---

[6]      Not only did Plaintiffs' Counsel never cite <u>Dubuque</u> during the pre-dismissal course of this litigation, but Plaintiffs' Counsel also did not cite <u>Decorative Center</u>, <u>Lehman Brothers</u>, or any other case advancing similar (but here inapposite) arguments.

[7]      The opposition to this motion simply reinforces that finding.  The opposition papers admit that Plaintiffs' Counsel had the unambiguous operative agreements before them prior to suit, reviewed those agreements, and knowingly filed suit nonetheless.  <u>See</u> Opp. at 8 (Plaintiffs Counsel acted in November 2004 based on the "bundle of

2716679v1

purpose that motivated Plaintiffs' Counsel's premature filing: they "knowingly asserted the legal rights still belonging to Prudential in order to avoid the statute of limitations bar," a tactic that was "impermissible." Id. at 38.

In addition, Plaintiffs' Counsel's own repeated filings well show that Counsel did their best to deflect the Court's attention from Plaintiffs' lack of standing, in an inappropriate effort to prolong this matter. DB 1927 Mem. at 1-9, 11-17. When defendants raised the absence of proper standing allegations as soon as their motion to dismiss could proceed, Plaintiffs' Counsel labeled that "silliness" and simply asserted that "documentation" produced in discovery showed otherwise. DB 1927 Mem. at 1-2; Plaintiffs' Response to [Joint] Motion to Dismiss [Dkt. No. 28] at 8. When defendants then presented the Court with the governing documentation, the participation and sub-participation agreements, Plaintiffs' Counsel moved to strike defendants' submission, opposed the Court's consideration of the agreements, distorted their substance, and called defendants' arguments "spurious." Plaintiffs' Objection and Sur-Reply [Dkt. No. 43] at 2, 8-16. Plaintiffs' Counsel continued to make filing after filing as if the case rested on a proper legal foundation, when the operative agreements made obvious that it did not. DB 1927 Mem. at 7-9, 14-17.[8] Plaintiffs' Counsel pursued this strategy for a second improper purpose: to give

---

rights" "received via the participation and sub-participation agreements"); Mytelka Aff. ¶ 8 (referring to transactions from "three years prior" as the basis for suit).

[8]     As late as September 2011, just two months before the Court's rejection of Plaintiffs' Counsel's request to amend the complaint a second time and final dismissal of the case based on the lack of standing back in 2004, Plaintiffs' Counsel were vigorously deflecting defendants' point that any amendment was futile – in light of the entire suit's lack of proper foundation – and claiming that "Plaintiffs' have conclusively established the fatal flaws in the Financial Institutions' arguments" related to standing. Plaintiffs' Reply Brief in Response to the Financial Institutions' Memorandum of Law in Opposition to Plaintiffs' Motion for Leave to File a Second Amended Complaint [Dkt. No. 63] at 2-3. Plaintiffs Counsel asserted that the defendants were "repeat[ing] their flawed arguments *ad nauseam,*" id., when it was Plaintiffs' Counsel's continued filings that were causing defendants to have to repeat themselves.

Plaintiffs' Counsel misleading portrays this case as if it involved only minimal "motion-to-dismiss stage" briefing, Opp. at 2 n.1, when in fact Plaintiffs' Counsel went ahead with full discovery, amended once and moved to amend twice, and repeatedly asked for other actions by the Court, all in a matter where Plaintiffs' lacked standing from the

2716679v1

themselves and their clients time to attempt to extract settlements from the defendants, in the context of the extreme settlement pressure already created by the over-arching Enron MDL. Id. at 1-3; 17-20. Because they filed suit without standing, obfuscated to hide that suit's fatal flaw and kept this improper suit alive long enough, Plaintiffs and Plaintiffs' Counsel were able to reap the benefits of such a settlement from Citigroup. Id. Plaintiffs and Plaintiffs' Counsel then dropped the suit as soon as the Court finally exposed its lack of foundation. See Opp. at 15 n.45.

As is typical on Section 1927 motions, since Section 1927 addresses "proceedings" in the case, this request for sanctions is grounded in the case file itself. See, e.g., Lewis v. Brown & Root, Inc., 711 F.2d 1287, 1289-92 (5th Cir.1983) (reviewing case history and then affirming sanctions under Section 1927, because "[o]n this record the district court was justified in concluding, as it did, that the entire course of proceedings was unwarranted and should neither have been commenced nor persisted in"); Silica Products, 398 F. Supp. 2d at 673-76, 678 (finding liability under Section 1927 after describing how plaintiffs' counsel did not attempt "to stop the hearings or withdraw their claims or acknowledge that they did not have legitimate" bases; plaintiffs' counsel proceeded as if they had legitimate support; and defendants' litigation efforts were necessary to bring the lack of legitimacy to light). Here, Plaintiffs' Counsel's actions are well documented in the record and already well understood by the Court, including within the broader context of the massive Enron MDL.

Similarly, Deutsche Bank's damage from the initial filing of this case and its unnecessary, prolonged history is readily apparent from the case file. If Plaintiffs' Counsel had properly refrained from bringing suit – or promptly dismissed the suit – because of Plaintiffs' clear lack of standing, all of Deutsche Bank's and the other defendants' efforts to show the Court

---

outset and had no legal basis for imposing any burdens on defendants or the Court – much less the continuing burdens caused by Plaintiffs' Counsel's repeated unnecessary multiplication of these proceedings.

that lack of standing need never have occurred.  Cf. Silica Products at 678.  Deutsche Bank's efforts clearly cost it attorney time and expense.  Contrary to the arguments of Plaintiffs' Counsel, Deutsche Bank has established damage from Plaintiffs' Counsel's unreasonable multiplication of these proceedings, and can reserve further proof as to the reasonable and specific amount of fees and costs incurred until a second step in the Court's consideration of this motion.  Id.  A two-step process occurs often on Section 1927 and other sanction motions, and the party requesting sanctions is not required to provide documentation of the specific attorney hours spent and expenses incurred with its initial motion.  See, e.g., Riopelle v. Reid, No. H-09-2318, 2010 WL 1996534, at *3 (S.D. Tex. May 17, 2010) (Harmon, J.) (ruling that defendant was entitled to an award under Section 1927 and ordering further filings on the specific amount); TXCAT v. Phoenix Group Metals, LLC, No. H-10-0344, 2010 WL 5186824, at *8-9 (S.D. Tex. Dec. 14, 2010) (Harmon, J.) (granting sanctions motion, and ordering defendants to submit a specific request for fees and expenses incurred in making summary judgment motion and in making sanctions motion).[9]  As Deutsche Bank made clear in its initial motion papers, moreover, it refers the Court to the amount of the Citigroup and CIBC settlements not as some means of proving its damages, as Plaintiffs' Counsel without foundation contends, but as relevant in the Court's consideration, during the second step, of '"the least severe sanction adequate to achieve

---

[9]     The opposition brief's references to decisions under ordinary fee-shifting statutes, Opp. at 21 (citing Hensley, Shipes, and Arnold), have no bearing on this motion for Section 1927 sanctions. And Travelers Inc. Co. v. St. Jude Hospital of Kenner, La., Inc., 38 F.3d 1414 (5th Cir. 1994), did involve a party requesting Section 1927 sanctions, being awarded such sanctions, and then having the specific amount of fees and expenses determined in a second step. 38 F.3d at 1416-18; DB 1927 Mem. at 4-5; cf. Opp. at 21. Plaintiffs' Counsel are splitting hairs in arguing that Travelers did not involve a "motion" for Section 1927 sanctions. Opp. at 21. Instead of a typical motion, the party moving for sanctions in that case "requested sanctions" in another filing and also sent a certified letter informing its adversary and the court that it sought sanctions under Section 1927. 38 F.3d at 1418. As Travelers emphasizes, the "imposition and quantification" of sanctions under Section 1927 are committed to the district court's discretion. Id.

the purpose of [Section] 1927.'" DB 1927 Mem. at 19 (quoting Topalian v. Ehrman, 3 F.3d 931, 936-37 (5th Cir. 1993)).[10]

## IV.  THE MOTION COMPLIES WITH ALL PROCEDURAL REQUIREMENTS

Plaintiffs' Counsel begins its opposition by falsely contending that this is a Rule 11 motion. Opp. at 13. Deutsche Bank's motion, however, could not be more clear in explicitly stating that it is a motion under 28 U.S.C. § 1927 and under the Court's inherent powers to supervise proceedings before it. DB 1927 Mem. at 1, 3-4 & n.3, 10 & n.5; Deutsche Bank's Motion for Attorneys' Fees Under 28 U.S.C. § 1927 [Dkt. No. 65] at 1-2. Plaintiffs' Counsel is at least correct in recognizing that Deutsche Bank seeks a remedy for Plaintiffs' Counsel's initiation of suit without legal foundation, but Deutsche Bank also clearly seeks a remedy for Plaintiffs' Counsel's unnecessary and unreasonable continuation of this matter, when the lack of standing was known to Plaintiffs and Plaintiffs' Counsel from the start. These circumstances present prototypical Section 1927 issues.

In addition, Plaintiffs' lack of standing (and that the absence of standing was apparent to both Plaintiffs and Plaintiffs' Counsel) were not matters known to Deutsche Bank and the other defendants from the start, but only became known through much-later receipt of documents during discovery and analysis in connection with defendants' motion to dismiss. Defendants were in no position to file a Rule 11 motion at the outset of this litigation, and need not have done so. Section 1927 provides an independent remedy. Travelers, 38 F.3d at 1418. The Court's inherent authority provides another. Critically, Plaintiffs and Plaintiffs' Counsel cannot somehow blame defendants for the wastefulness of this litigation, when at every juncture the

---

[10]  Deutsche Bank believes that the disgorgement of settlement proceeds by Plaintiffs' Counsel (under Section 1927 or the Court's inherent authority) and/or by Plaintiffs (under the Court's inherent authority) up to the amount of Deutsche Bank's reasonably incurred fees and expenses is an appropriate remedy – and the least severe sanction adequate – under the circumstances.

16

decision whether to initiate suit, to keep making filings and imposing costs, or to desist was in their hands.

Similarly, Plaintiffs' Counsel ends its opposition with a flurry of references to other Federal Rules of Civil Procedure or Local Rules, none of which apply. Rule 54 explicitly excludes from its timing and procedural requirements any "claims for fees and expenses as sanctions for violating these rules or as sanctions under 28 U.S.C. § 1927." Fed. R. Civ. P. 54(d)(2)(E). Likewise, Local Rule 54.2 has no bearing here, for it concerns the routine taxing of costs. Cf. Opp. at 21. Nor is this motion made under Federal Rules 59(e) or 60; it has nothing to do with altering or seeking relief from a judgment, but instead builds on the Court's judgment in this case. Id. Plaintiffs' Counsel appear willfully to ignore the well-established jurisprudence, cited in Deutsche Bank's motion, that allows Section 1927 motions to be made at any reasonable time post-judgment and that underscores the Court's continuing jurisdiction to consider such motions. See Ratliff v. Stewart, 508 F.3d 225, 229-32 (5th Cir. 2007) (district court had jurisdiction to impose sanctions under Section 1927 more than a year after final dismissal of case); Steinert v. Winn Group, Inc., 440 F.3d 1214, 1223 (10th Cir. 2006) (Section 1927 "sanctions are not untimely if sought or imposed after final judgment"); TXCAT, 2010 WL 5186824, at *9 ("[i]t is established law that a district court has jurisdiction to impose … sanctions even where it has dismissed a case because of lack of jurisdiction"); DB 1927 Mem. at 10 n.4. Instead, Plaintiffs' Counsel again send the parties and the Court down blind alleys and wasteful byways, while refusing to acknowledge the settled governing law.

17

## CONCLUSION

For all the foregoing reasons, and for all the reasons stated in Deutsche Bank's initial motion papers, this Court should grant Deutsche Bank's request for sanctions under Section 1927 and/or the Court's inherent powers.  The course of conduct by Plaintiffs and Plaintiffs' Counsel in this matter fully establishes that some level of award is appropriate.

The Court should then order further submissions, within any parameters it may set, for Deutsche Bank to show its reasonable attorneys' fees, expenses and costs, and for Plaintiffs and Plaintiffs' Counsel to make any objections to those fees, expenses and costs or other submissions.  After those submissions, the Court should set the amount of the award.

March 16, 2012                                    Respectfully submitted,

                                                  By: /s/ Eric D. Wade
                                                      Eric D. Wade
                                                      State Bar No. 00794902
                                                      Daniel K. Hedges
                                                      State Bar No. 09369500
                                                      PORTER HEDGES LLP
                                                      1000 Main Street, 36th Floor
                                                      Houston, Texas 77002
                                                      Telephone: (713) 226-6000
                                                      Facsimile: (713) 226-6255

                                                  OF COUNSEL:

                                                  Lance Croffoot-Suede
                                                  Ruth E. Harlow
                                                  Kimberly Evans
                                                  LINKLATERS LLP
                                                  1345 Avenue of the Americas
                                                  New York, New York 10105
                                                  Telephone: (212) 903-9000
                                                  Facsimile: (212) 903-9100

                                                  **Attorneys For Defendants**
                                                  **Deutsche Bank AG, Deutsche Bank**
                                                  **Securities Inc., and Deutsche Bank**
                                                  **Trust Company Americas**

18

## CERTIFICATE OF SERVICE

I hereby certify that on the 16th day of March, 2012, a true and correct copy of the foregoing was served on all counsel of record through the Southern District of Texas CM/ECF electronic filing system.

/s/ Eric D. Wade_____
Eric D. Wade

19

2716679v1