# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| RAVENSWOOD CAPITAL - I, L.L.C., et al., | § § § | |
| Plaintiffs, | § | |
| v. | § § | C.A. NO. H-04-4520 |
| CITIGROUP, INC., et al., | § | JURY |
| Defendants. | § § | |
| ——————————————— MARK NEWBY, | § § | |
| Plaintiff, | § § | |
| v. | § § | Consolidated Lead No. H-01-3624 |
| ENRON CORP., et al., | § § | |
| Defendants. | § § | |
| ——————————————— | § | |

## SURREPLY IN OPPOSITION TO DEUTSCHE BANK'S MOTION FOR ATTORNEYS' FEES UNDER 28 U.S.C. § 1927 [INSTR. NO. 65]

Plaintiffs and their counsel file this Surreply to Deutsche Bank's Reply Memorandum of Law [Instr. No. 71] (the "Reply" or "Reply Brief") which pertains to Deutsche Bank's Motion for Attorneys' Fees Under 28 U.S.C. § 1927 [Instr. No. 65] (the "Motion").

### **OVERVIEW**[1]

Deutsche Bank's Reply Brief repeats at least two issues. In sections I and II, it complains Plaintiffs did not cite *Dubuque Stone Products Co. v. Fred L. Gray Co.,* 356 F.2d 718 (8th Cir. 1966) in response to its Motion to Dismiss. Yet the Court considered, and chose not to apply, the *Dubuque* rule.[2] In section III of the Reply, citing the Court's Opinion and Order of Dismissal (the "Opinion"), Deutsche Bank claims Plaintiffs' counsel "knew" Plaintiffs lacked standing. This repeated aspersion is simply untrue and is directly refuted in affidavit and deposition testimony provided by Plaintiffs. The facts and law existing at the time of filing supported the good-faith belief and understanding that Plaintiffs—who held economic interests in the Notes and paid millions for those interests years before filing suit—had standing. Moreover, when suit was filed, Plaintiffs pled their rights as successors-in-interest. Instr. 1 at pg 1.

Deutsche Bank's arguments do nothing more than distract from (and attempt to lower) the Section 1927 standard,[3] including Deutsche Bank's burden to show by clear and convincing evidence that every facet of this litigation was patently meritless. Deutsche Bank further ignores

---

[1] Plaintiffs are aware of the Court's local rule that the parties will be contacted if the Court decides to set an oral hearing. While Plaintiffs believe Deutsche Bank's motion should be denied outright on the pleadings, the Bank has made very serious allegations about Plaintiffs' counsel that may make oral argument on this Motion appropriate. Moreover, as this Surreply attempts to respond to the Bank's 18-page Reply within the confines of a 6-page limit, oral argument would allow Plaintiffs to address any additional questions the Court may have.

[2] Op. at 36 n.21 ("Because the issue is undecided, the Court will not apply the *Dubuque* rule . . . .").

[3] Deutsche Bank appears to concede now that it does not request relief under FED. R. CIV. P. 11. Resp. at 16. Regardless, Deutsche's complaint is that Plaintiffs *filed* the lawsuit. The proper (and usual) remedy for alleging that an attorney signed and filed a frivolous pleading is under Rule 11—the procedural requirements of which Deutsche never followed. *See* Pl. Response at 13; FED. R. CIV. P. 11(c)(2).

the fact that it moved to dismiss Plaintiffs' Amended Complaint, which was filed long after elevation, and Plaintiffs understood that if any standing defect had existed, it had been cured.

## THIS SUIT WAS NOT FILED IN BAD FAITH OR WITH IMPROPER PURPOSE

Deutsche Bank attempts to support a bad-faith argument by faulting Plaintiffs for failing to disclose work product in their response.  Perhaps this is because case law makes clear that sanctions are inappropriate where there is no improper purpose.  *FDIC v. Calhoun,* 34 F.3d 1291, 1300 (5th Cir. 1994).  Section 1927 does not "shift" some burden to Plaintiffs to justify their behavior or filings.  *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 421–22 (1978).  Rather, Deutsche Bank must prove Plaintiffs' counsel pursued a bad-faith strategy unsupported by the facts and law.

Plaintiffs and their attorneys researched the facts and law at the time of filing and this is proven by the affidavit and deposition testimony filed by Plaintiffs.[4]  Simply put:  the evidence shows Plaintiffs' counsel did not file suit in bad faith or with improper purpose.  Instead, and as established in the Affidavit of Andrew Mytelka, counsel determined that a reasonable basis for standing existed under the facts.[5]  Plaintiffs' counsel also determined that a reasonable basis for standing existed under the law.[6]

At the time that this lawsuit was filed against Deutsche Bank, this Court had already found that May 22, 2002, was the date a reasonably prudent person would have been put on

---

[4] *See* Pl. Res. at n.13 & 47; *see also* Exhibit 5 to Pl. Resp. at ¶¶7–8, and Exhibits 7–12 to Document Number 38.

[5] *See* Section 2(a) of subparticipation agreements [Ex. 4 and 5 to Instr. No. 38] (stating that at the Effective Time, or payment, Plaintiffs purchased 100% participation in the Seller's Rights and at that time the participant is entitled to exercise and enforce all rights with respect to the participation—including the Seller's Rights, which include causes of action against any entity).  Moreover, any right of first refusal had been waived by Enron prior to filing subject to the bankruptcy court's approval.  These facts supported the belief that Plaintiffs possessed an enforceable interest at the time of suit and before elevation.

[6] *See, e.g.*, *Kedroff v. St. Nicholas Cathedral*, 344 U.S. 94, 113 (1952) (plaintiff has standing to sue based upon its beneficial interest in the property); *Asset Restructuring Fund, L.P. v. Lib. Nat'l Bank and Resolution Trust Corp.*, 886 S.W.2d 548, 551–52 (Tex. App.—Austin 1994, writ denied).

notice of Deutsche Bank's complex, concealed tax schemes.  *In re Enron Corp.*, 310 F.Supp.2d 819, 838 n.27 (S.D. Tex. Mar. 29, 2004).  Therefore, Plaintiffs' counsel reasonably expected that, as to Deutsche Bank, a three-year Texas Securities Act limitations would run at the earliest in May 2005, and that fraud claims would run at the earliest in May 2006 (if the Court ultimately applied Texas law), or May 2008 (if the Court applied New York law).  *See* Instr. No. 1 at 53 n.2.[7]  Regardless, where Plaintiffs subsequently argued in or after 2006 (more than two years after this suit was filed) that December 2, 2001 was the earliest possible date limitations could begin to accrue against any defendant, that argument does not supersede the Court's prior 2004 ruling that a reasonably prudent person would not have been on notice of Deutsche Bank's complex, concealed tax schemes until May 2002.

Prior to filing this lawsuit, Plaintiffs had paid millions of dollars for their interests in the Notes, Enron had waived any Right of First Offer under the Notes pending approval of the bankruptcy court (in an agreement negotiated by the Ravenswood entities' predecessor in interest), and the deadline to object to the waiver in the bankruptcy court had run.  Plaintiffs also refer to the scheduling orders controlling discovery and pleadings as part of the MDL.  Compliance with such orders does not amount to bad-faith multiplication of proceedings.

## ESTABLISHED AUTHORITY SUPPORTED THIS SUIT

The parties' dispute about standing was a legal question properly presented to this Court for resolution.  While the Court ultimately disagreed with Plaintiffs, this case was supported by the law or by good-faith legal argument.  *See* notes 5 and 6 *supra* and notes 9–12 and 15, *infra*.

Regardless, in considering *Dubuque*, the Court could have chosen to permit Plaintiffs' suit to move forward—and that alone should be the end of the story.  Deutsche Bank complains

---

[7] Deutsche Bank also faults Plaintiffs for making a good-faith argument to apply legislative intent over Texas case law that blindly cites a two-year limitations period to actions for conspiracy to defraud.  A good-faith argument to change existing law is not sanctionable under Section 1927, even if "improbable" in federal court.

Plaintiffs never cited *Dubuque* to the Court.  Deutsche Bank's argument misses the standard—and the point—that case law existed at the time of filing that would have permitted Plaintiffs' suit and allowed it to move to trial.  Instead, Deutsche Bank cites to inapposite cases.[8]  For example, case law points to a split in authority as to whether holders of 100% of a participating interest can bring claims.[9]  Where case law is undecided, Section 1927 sanctions should not issue.  Furthermore, case law exists (and existed at the time of filing) to cure a standing defect, and to relate such cure back to the original filing.[10]

Contrary to Deutsche Bank's contentions,  Plaintiffs' counsel was aware of law allowing a party to cure any standing defect, but believed Plaintiffs, at a minimum, had sufficient interest to support standing.[11]  The Court disagreed, yet case law existed which would afford the Plaintiffs an opportunity to cure through various methods—including amendment, joinder, and/or recognition of post-filing assignment.[12]  Interestingly, these cases differ in applying a

---

[8] *See* Reply at 4 (citing *In re Taxable Mun. Bond Sec. Litig.*, No. MDL 863, 1994 WL 34924, at *3 (E.D. La. Feb. 3, 1994) (where six of seven cases in MDL dropped claims and one plaintiff proceeded alone despite court's warning to carefully assess claims, court suspected dilatory motive and sanctions warranted) and *Browning v. Kramer*, 931 F.2d 340, 345 (5th Cir. 1991) (remanding where it was not shown that every facet of litigation was patently meritless, even where plaintiff pursued state law claims after court ruled they were preempted under ERISA)).

[9] *Asset Restructuring Fund*, 886 S.W.2d at 551–52 ("the majority view – and the view we choose to follow – classifies a participation as complete transfer of ownership interest in the loan and collateral to the participant.") (citation omitted); *see also Franklin v. Comm'r of Internal Revenue*, 683 F.2d 125, 128 n.9 (5th Cir. 1982) (holding that under the terms of the participation agreement, "the participant is an assignee of a percentage interest of the loan and the lead bank is the agent for servicing the entire loan"); *Jefferson Sav. & Loan Ass'n v. Lifetime Sav. & Loan Ass'n*, 396 F.2d 21, 24 (9th Cir.1968) (holding that when the lead bank purchased the collateral securing the participated loan at the trustee's sale, the participant was a "co-tenant" with the lead bank and "the beneficiary of the trust").

[10] *Dubuque,* 356 F.2d at 723–24 (holding that assignment may occur after the lawsuit initiated); *Kilborn v. Western Sur. Co.,* 187 F.2d 567, 571 (10th Cir. 1951) (same).

[11] *Hurt v. Cotton States Fertilizer Co.*, 145 F.2d 293, 295 (5th Cir. 1944); *Rosenfeld v. Schwitzer Corp.*, 251 F. Supp. 758, 762 (S.D.N.Y. 1966); *Marco v. Dulles*, 177 F. Supp. 533, 552 (S.D.N.Y. 1959); *Singer v. State Laundry*, 188 Misc. 583, 586, 68 N.Y.S.2d 808, 811–12 (N.Y. Sup. Ct. 1947).

[12] Indeed, a number of courts have allowed an assignment of rights after the lawsuit was filed.  Two Circuit Courts issued decisions relevant to the issue here, and both allow assignment after filing of the case: the Eighth Circuit in *Dubuque* and the Tenth Circuit in *Kilborn.*  Two cases following *Dubuque* from the Southern District of Texas were cited by this Court and were discussed in Plaintiffs' Response to the sanctions Motion.  District courts in a number of circuits also have followed *Dubuque* and *Kilborn.  See, e.g.*, *Intimo v. Briefly Stated, Inc.,* 948 F. Supp 315, 318 (S.D.N.Y. 1996)  (the court allowed assignment on the eve of trial); *Infodek, Inc. v. Meredith Webb Printing Co,* 830

"real party in interest" analysis.[13]   Yet, under either of these constructions, Plaintiffs' claims would have been allowed.

Plaintiffs' counsel is required only to make a reasonable inquiry into the law.  *Card v. State Farm Fire & Cas. Co.,* 126 F.R.D. 654, 656 (N.D. Miss. 1989).  "Merely because plaintiffs and their counsel were mistaken as to the law does not mean that the mistake was unreasonable." *Id*. (quoting *Smith Int'l, Inc v. Tex. Commerce Bank*, 844 F.2d 1193, 1199 (5th Cir. 1988). Where the focus under Section 1927 is counsel's conduct, not the merits of the case, Deutsche Bank's argument must fail, as it does not identify sufficient specific conduct amounting to vexatious or unreasonable multiplication of proceedings.  Filing suit simply does not rise to a level to sustain Section 1927 sanctions where facts and case law existed which Plaintiffs' counsel believed in good faith supported standing.

## DEUTSCHE BANK HAS NOT MET ITS BURDEN TO ESTABLISH SANCTIONS

To shift the entire cost of defense under Section 1927, as Deutsche Bank attempts to do, it "must prove, by clear and convincing evidence, that *every facet* of the litigation was patently meritless, and counsel must have lacked a reason to file the suit and must wrongfully have persisted in its prosecution . . . ."  *Procter & Gamble Co. v. Amway Corp.*, 280 F.3d 519, 525–26 (5th Cir. 2002) (internal citation omitted) (emphasis in original).[14]  Deutsche Bank has not and cannot do so.  Plaintiffs' counsel researched the facts and case law prior to filing and believed in

---

F. Supp. 614, 620–21 (N.D. Ga. 1993) (assignee entitled to sue for copyright infringement where the assignment was made one year after initiation of litigation);  *Campus Sweater and Sportswear Co .v. M.B. Kahn Constr. Co.,* 515 F. Supp. 64, 84 (D.S.C. 1979) (assignment of rights after lawsuit was filed).

[13] *Compare Kilborn v. Western Sur. Co.,* 187 F.2d at 571 (finding plaintiff becomes the real party in interest at the time of assignment) *with Campus Sweater and Sportswear Co .v. M.B. Kahn Constr. Co.*, 515 F. Supp. at 84 ("even when the claim is not assigned until after the action has been instituted the assignee is the real party in interest and can maintain the action.").

[14] *See, e.g. Bryant v. Military Dep't of Miss,* 597 F.3d 678, 694 (5th Cir 2010) ("Sanctions under 28 U.S.C. § 1927 are punitive in nature and require 'clear and convincing evidence, that every facet of the litigation was patently meritless' and 'evidence of bad faith, improper motive, or reckless disregard of the duty owed to the court'"); *FDIC v. Calhoun*, 34 F.3d 1291, 1300 (5th Cir. 1994).

good faith that Plaintiffs had sufficient standing, and that any defect in standing was cured by no later than February 18, 2005—and Plaintiffs' Amended Complaint was filed on August 17, 2006, pursuant to the Court's scheduling order and prior to Deutsche Bank's Motion to Dismiss.

After elevation and in response to the Motion to Dismiss, Plaintiffs could have dismissed their case in full without prejudice, and immediately re-filed the same complaint, with the same allegations, against Deutsche Bank.  Such action would have amounted to a waste of resources, especially where the complaint was amended after elevation and prior to the filing of the Motion to Dismiss.[15]  Plaintiffs and their counsel filed suit because they believed (as set out in prior filings and herein) that they had a good-faith basis in fact and law to support standing and that, should the Court ultimately disagree, such standing defect could be (and actually had already been) cured.

## CONCLUSION

Deutsche Bank is the only party attempting to extract sanctions.  Despite its repeated complaints and rhetoric, Deutsche Bank cannot transform the Court's decision that Plaintiffs lacked standing at the time of filing into a knowing or bad-faith abuse of process sufficient to sustain the Section 1927 standards where it provides no such evidence, and where it fails to show by clear and convincing evidence that Plaintiffs unreasonably and vexatiously multiplied proceedings.

---

[15] *See Northstar Fin. Advisors, Inc. v. Schwab Investments*, 781 F. Supp. 2d 926, 932–33 (N.D. Cal. 2011) (where assignment occurred after filing, court rejected defendants' argument that assignment was "too late" to confer standing as "elevat[ing] form over substance" where defendants' argument required court to dice the propriety of two procedural mechanisms—dismissal without prejudice and re-filing a new case, or simply relying on an amended complaint); *Bushnell, Inc. v. Brunton Co.*, 659 F. Supp. 2d 1150, 1160–61 (D. Kan. 2009) (finding amendment sufficiently alleges post-filing standing, agreeing that forcing plaintiff to dismiss and re-file would be a waste of resources, and therefore allowing plaintiff to proceed as of the date of the amendment rather than as of the date of original filing).  As stated in *Northstar*, other circuits have held that parties may cure standing defects with supplemental pleadings. *Id.*; *Travelers Ins. Co. v. 633 Third Assoc.*, 973 F.2d 82, 87–88 (2d Cir.1992) (granting plaintiff leave to file supplemental pleading to establish standing); *Decorative Ctr.*, 264 F.Supp.2d at 544 n. 22.

Respectfully Submitted,

_/s/ Lee L. Kaplan_
Lee L. Kaplan
Bar Id. No. 11094400
Larry R. Veselka
Bar Id. No. 20555400
SMYSER KAPLAN & VESELKA, L.L.P.
700 Louisiana, Suite 2300
Houston, Texas 77002
Telephone 713.221.2300
Facsimile 713.221.2320


Andrew J. Mytelka
State Bar No. 14767700
S.D. Tex. I.D. No. 11084
Joe A.C. Fulcher
State Bar No. 07509320
Steve Windsor
State Bar No. 21760650
One Moody Plaza, 18th Floor
Galveston, Texas  77550
(409) 797-3200
(409) 766-6424 (FAX)

ATTORNEYS FOR PLAINTIFFS


## CERTIFICATE OF SERVICE

I hereby certify that on March 26, 2012, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification to all counsel of record.


_/s/ Lee L. Kaplan_
Lee L. Kaplan