IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In Re ENRON CORPORATION SECURITIES, DERIVATIVE & "ERISA" LITIGATION, | § § § | MDL 1446 |

| | | |
|---|---|---|
| MARK NEWBY, et al., | § § | |
| Plaintiffs | § § | |
| VS. | § § | CIVIL ACTION NO. H-01-3624 AND CONSOLIDATED CASES |
| ENRON CORPORATION, ET AL., | § § | |
| Defendants | § | |

| | | |
|---|---|---|
| RAVENSWOOD I, L.L.C., RAVENSWOOD II, L.L.C., and WHITEWOOD, L.L.C., | § § § § | |
| Plaintiffs, | § § | |
| VS. | § § | CIVIL ACTION NO. H-04-4520 (COORDINATED CASE) |
| CITIGROUP, INC., et al., | § § | |
| Defendants. | § | |

**OPINION AND ORDER**

Pending before the Court in H-04-4520 is Deutsche Bank AG, Deutsche Bank Securities Inc., and Deutsche Bank Trust Company Americas' (collectively, "Deutsche Bank's") motion for attorneys' fees, expenses, and costs under 28 U.S.C. § 1927 and the Court's inherent powers (instrument #65). Deutsche Bank estimates that it reasonably incurred fees and expenses over seven years of

litigation, allegedly vexatiously caused and prolonged by Plaintiffs, amounting to over $1,300,000.[1]

## Relevant Law

Federal Rule of Civil Procedure 17(a)(1) requires, "An action must be prosecuted in the name of the real party in interest." "The real party in interest is the person holding the substantive right sought to be enforced, and not necessarily the person who will ultimately benefit from the recovery." *Wieburg v. GTE Southwest Inc.*, 272 F.3d 302, 306 (5th Cir. 2001); *In re Signal Int'l, LLC*, 579 F.3d 478, 487 (5th Cir. 2009). A plaintiff that does not possess a right under the substantive law is not the real party in interest with respect to that right and may not assert it. *United States v. 936.71 Acres of Land*, 418 F.2d 551, 556 (5th Cir. 1969). The purpose of § 17(a) is "'to assure a defendant that a judgment will be final and that res judicata will protect it from having to twice defend an action, once against an ultimate beneficiary of a right and then against the actual holder of the substantive right." *Wieburg*, 272 F.3d at 306.

Rule 17(a)(3) currently provides,

> The court may not dismiss an action for failure to prosecute in the name of the real party in interest until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action. After ratification, joinder, or substitution, the action proceeds as if it

---

[1] #65 at p.4.

had been originally commenced by the real party in interest.

"This provision requires the defendant to object in time to allow the opportunity for joinder of the ostensible real party in interest, and the defense may be waived if the defendant does not timely object." *In re Signal*, 579 F.3d at 487-88.  An objection is timely as long as joinder of the real party in interest remains "'practical and convenient.'" *Id.* at 488, *citing Rogers v. Samedan Oil Corp.*, 308 F.3d 477, 484 (5th Cir. 2002).  An objection is tardy and inconvenient "when it hinders the 'goal of judicial efficiency' or manifests the defendant's intention to 'lay behind the log' in ambush."  *Id., citing Rogers*, 308 F.3d at 484, and *Gogolin & Stelter v. Karn's Auto Imps., Inc.*, 886 F.2d 100, 102 (5th Cir. 1989).  Since the Rule does not state when the challenge should be raised, "[t]here is no magic formula for determining practicality and convenience," and the determination is within the discretion of the district court based on the facts of each case.  *Id., citing* 6A Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, *Federal Practice and Procedure* § 1554 (2d ed. 1990).  Factors the court may consider include when the defendant knew or should have known the facts regarding the plaintiff's disputed status and whether the objection was timely asserted to permit the plaintiff "a meaningful opportunity to prove its status" or for the real party in interest to join the action.  The earlier the objection is raised, the more likely the high cost of trial preparation will be avoided,

-3-

furthering the goal of efficiency. *Gogolin & Stelter*, 886 F.3d at 102.  If joinder of the real party in interest is both practical and convenient when the objection is made, there is no waiver. *Rogers,* 308 F.3d at 484, *citing Gogolin & Stelter*, 886 F.3d at 100.

Title 28 U.S.C. § 1927 provides, "Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."  The statute permits imposition of sanctions only when there is "evidence of bad faith, improper motive, or reckless disregard of the duty owed to the court."  *Edwards v. Gen. Motors Corp.*, 153 F.3d 242, 246 (5th Cir. 1998).  In *City of Houston v. Club Fetish,* Civ. A. No. H-13-0944, 2013 WL 1767777, *4 (S.D. Tex. Apr. 24, 2013), the district court recently summarized,

> Section 1927 is a penal provision. *Procter & Gamble Co. v. Amway Corp.*, 280 F.3d 519, 526 (5th Cir. 2002)(citing *FDIC v. Conner*, 20 F.3d 1367, 1384 (5th Cir. 1994)).  A court must conclude that an attorney "multiplied the proceedings both 'unreasonably' and 'vexatiously' to require the attorney to personally pay part or all of the opposing parties' costs, expenses and attorneys' fees under § 1927.  *Id*. at 525 (citing *FDIC v. Calhoun*, 34 F.3d 1291, 1297 (5th Cir. 1994)).  The threshold for awarding costs under  § 1927 is higher than that applicable to Federal Rule of Civil Procedure 11; § 1927 requires a showing of improper motive on the part of an attorney, independent of a showing that the claims pursued were baseless.  *See Calhoun*, 34 F.3d at 1300.  The party seeking sanctions must present "'evidence of bad faith, improper motive, or reckless disregard of the

duty owed to the court.'" *Procter & Gamble Co.*, 280 F.3d
at 525 (quoting *Edwards v. Gen. Motors Corp.*, 153 F.3d
242, 246 (5th Cir. 1998)).  The Fifth Circuit considers
the invocation of § 1927 sanctions as an exception,
rather than the rule.  *Conner v. Travis Cnty.*, 209 F.3d
794, 799 (5th Cir. 2000).

The court has discretion in deciding whether to impose sanctions

under § 1927. *Travelers Ins. Co. v. St. Jude Hosp. of Kenner, La.,*

*Inc.*, 38 F.3d 1414, 1417 (5th Cir. 1994).  Section 1927, however,

must be strictly construed so as "not to dampen the legitimate zeal

of an attorney in representing his client." *Id.* at 1416.  The

statute "focuses on the conduct of the litigation and not on the

merits" and requires "clear and convincing evidence 'that *every*

*facet* of the litigation was patently meritless,'" as well as

"'evidence of bad faith, improper motive, or reckless disregard of

the duty owed to the court.'" *Id.* (emphasis in original), quoting

*Procter & Gamble*, 280 F.3d at 525-26.  Section 1927 "does not

authorize the wholesale reimbursement of a party for all of its

attorney's fees or for the total costs of the litigation."

*Browning v. Kramer*, 931 F.2d 340, 345 (5th Cir. 1991), *citing*

*Roadway Express, Inc. v. Piper*, 447 U.S. 752, 756 n.3 (1980), and

*Truck Treads, Inc. v. Armstrong Rubber Co.*, 868 F.2d 1472, 1474-75

(5th Cir. 1989).  Only "when the entire course of proceedings [was]

unwarranted and should neither have been commenced nor persisted

in," may the court shift the entire financial burden of an action's

defense. *Id., citing Lewis v. Brown & Root, Inc.*, 711 F.2d 1287,

1292 (5th Cir. 1983), *clarified on reconsideration*, 722 F.2d 209 (5th Cir. 1984). *See also Procter & Gamble*, 280 F.3d at 526 ("To shift the entire cost of defense, the claimant must prove by clear and convincing evidence that *every facet* of the litigation was patently meritless, and counsel must have lacked a reason to file the suit and must wrongfully have persisted in its prosecution through discovery, pretrial motions, and trial.). An award under the statute "'require[s] more detailed findings to determine whether the requirements of the statute have been met, and which, if any, excess costs, expenses or attorney's fees were incurred because of [the attorney's] vexatious multiplication of the proceedings.'" *Conner*, 20 F.3d at 1385, *quoting Browning*, 931 F.2d at 345.

Moreover the district court also has discretion under the court's inherent power to impose sanctions for bad-faith litigation tactics. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 55-56 (1991); *Camacho v. Texas Workforce Com'n*, 445 F.3d 407, 412 (5th Cir. 2006). A court's authority includes its "inherent power to impose sanctions for abuse of the judicial system" and arises from its power to manage its own affairs. *Barnhill v. U.S.*, 11 F.3d 1360, 1367 (7th Cir. 1993). A court's inherent power is "based on the need to control court proceeding[s] and [the] necessity of protecting the exercise of judicial authority in connection with those proceedings." *In the Matter of Case*, 937 F.2d 1014, 1023 (5th Cir. 1991). It is not a "broad reservoir of power, ready at the

-6-

imperial hand, but a limited source; an implied power squeezed from the need to make the court function." *NASCO, Inc. v. Calcasieu Television & Radio, Inc.*, 894 F.2d 696, 702 (5th Cir. 1990), *aff'd sub nom. Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991). The court's inherent power to impose fees as a sanction is restricted to cases "in which a litigant has engaged in bad-faith conduct or willful disobedience of a court's orders." *Chambers*, 501 U.S. at 47. "A court should invoke its inherent power to award attorney's fees only when it finds that 'fraud has been practiced upon it, or that the very temple of justice has been defiled.'" *Boland Marine & Mfg. Co. v. Rihner*, 41 F.3d 997, 1005 (5th Cir. 1995), *quoting Chambers*, 501 U.S. at 32.

**Deutsche Bank's Motion for Attorneys' Fees, Costs and Expenses**

Deutsche Bank argues that, as found by the Court in its Opinion and Order of November 29, 2011 (#64)[2] dismissing this action, Plaintiffs brought suit in 2004 knowing that they had no standing to assert the claims they did because the Enron notes in dispute were owned by The Prudential Insurance Company of America ("Prudential"), and Plaintiffs were merely sub-participants in that debt. For detailed examination of the history of this case and the Court's ruling see the Court's Opinion and Order, #64. The Court found that Plaintiffs filed suit anyway to circumvent imminent

---

[2] Now available at *In re Enron Corp. Securities, Derivative, & "ERISA" Litig.*, 279 F.R.D. 395 (S.D. Tex. 2011).

expiration of the statute of limitations.  "Section 1927 provides for the imposition of attorney's fees where a suit is unreasonably instigated" and where vexatious multiplication of litigation follows.  *Day v. Amoco*, 595 F. Supp. 1120, 1123 (S.D. Tex. 1984). Moreover, as Deutsche Bank details, Plaintiffs continued to prosecute, amending and adding claims and causing Deutsche Bank tremendous expense, through 2011 until the Court dismissed the case on November 29, 2011 (#64) for lack of subject matter jurisdiction under Rule 12(b)(1).  Deutsche Bank also complains that Plaintiffs' unlawful and persistent prosecution of this action and their strategy of positioning it within the massive Enron MDL caused Citigroup and, through a parallel and equally meritless proceeding, H-05-1164,[3] the Canadian Imperial Bank of Commerce ("CIBC") to

---

[3] Deutsche Bank's footnote 1, #65 at pp. 2-3, represents,

The tag-along pleading against CIBC states that Plaintiffs filed a separate complaint because "a Court-ordered stay precluded amendment of the pending complaint" in this action.  CIBC Complaint ¶ 9.  The CIBC Complaint, like the amended Complaint here, misleadingly alleged that Plaintiffs themselves had been defrauded through Enron schemes, see, e.g., id. ¶¶ 12, 14, despite the fact that Plaintiffs did not even become participants in lending to Enron until after its bankruptcy filing. Indeed the CIBC Complaint never mentions Prudential at all and is pled throughout as if Plaintiffs owned the Enron Notes from their initial issuance. . . . Through this obfuscation, Plaintiffs' counsel avoided any allegations in the CIBC Complaint that would expose to the Court Plaintiffs' lack of standing in this action. CIBC settled each of the MDL actions filed against it, apparently as a result of its admission of wrongdoing with Enron in a deferred prosecution agreement with the U.S. Department of Justice. . . .

enter into settlements by which Plaintiffs' counsel personally profited in recovery of their fees.[4]      Deutsche Bank proposes a two-step approach to the award of fees and expenses:  first a determination by the Court of liability, followed by ordering submission of evidence of the amounts of the settlements and of the personal recovery by Plaintiffs' counsel so that the Court can determine the amount of money that should be paid by Plaintiffs' counsel.[5]  Deutsche Bank argues that when "the entire course of proceedings was unwarranted and should neither have been commenced nor persisted in," the financial burden born by the adverse party may be awarded in full under § 1927,[6] in accordance here with a purported contingency fee agreement dated November 11, 2004 entitling Plaintiffs' counsel to 25% recovery by Plaintiffs in settlement before trial.  Nevertheless Deutsche Bank "is willing to cap its recovery of fees and expenses from Plaintiffs' counsel at the amount those attorneys extracted for themselves in settlements while Plaintiffs' bogus claims were pending, if the Court deems

---

[4] Plaintiffs justifiably point out that these two "were sophisticated financial institutions represented by able and experienced defense counsel" who could weigh the merits of the claims against them, despite Deutsche Bank's unsubstantiated efforts to suggest the settlements were improper.

[5] The suit names Andrew J. Mytelka and Joe A.C. Fulcher and the firm of Greer, Herz & Adams, L.L.P. as counsel for Plaintiffs.

[6] *Browning v, Kramer*, 931 F.2d 340, 345 (5th Cir. 1991), *citing Lewis v. Brown & Root, Inc.*, 711 F.2d 1287, 1292 (5th Cir. 1981), *clarified on reconsideration*, 722 F.2d 209 (5th Cir. 1984).

such a limit on the award appropriate." #65 at p. 4. If instead of applying § 1927 the Court decides to exercise its inherent powers to order that both Plaintiffs' counsel and Plaintiffs, themselves, should pay Deutsche Bank's fees and expenses, Deutsche Bank requests the award to be capped at the total settlement amounts recovered by Plaintiffs . . . ." *Id.* at p.4 n.3.

### Plaintiffs' Response in Opposition (#68)

Plaintiffs assert four arguments in negating Deutsche Bank's contention that Plaintiffs' counsel acted in bad faith or with improper motive or reckless disregard of their duty to the Court and that their suit was baseless and vexatious: (1) based on legal research Plaintiffs filed this suit in good faith on November 20, 2004, three years after purchasing the notes at issue; (2) Plaintiffs' rights in the notes were perfected two and a half months after the filing of this suit, i.e., no later than February 18, 2005; (3) *Dubuque Stone Products Co. v. Fred L. Gray Co.*, 356 F.2d 718 (8th Cir. 1966) and progeny, including two decisions in the Southern District of Texas, would allow Plaintiffs' claims to proceed and would defeat Deutsche Bank's whole motion; and (4) in violation of Local Rules, Deutsche Bank failed to submit any evidence of reasonable fees allegedly incurred because of Plaintiffs' purported wrongful conduct. In contrast, Plaintiffs submit affidavits, deposition excerpts, and copies of the sub-participation agreements at issue to support their arguments.

The Court briefly summarizes Plaintiffs' discussion of the history of the notes and their ownership and refers the parties to #68 for greater detail.  The two notes (Exs. 1 and 2 to #38, one in the original principal amount for $73,828,459.00, and the other, for $41,696,505.00, which were to close on May 31, 2001), were obtained by Prudential from Enron, as shown by documents produced during discovery.  On November 28, 2001 Prudential accepted Enron's offer to prepay the notes in full by December 20, 2001, but Enron failed to do so, defaulted, and went into bankruptcy.  Prudential decided to take the loss and offset it with other gains and sale of other securities by selling what it perceived as all of its 100% participation interest in the notes at a loss in the secondary distressed debt market via a participation agreement to Bear Stearns & Company ("Bear Stearns") on December 19, 2001, but providing that Prudential would continue to manage the notes.  *See* Prudential's corporate representative Randall Kob Dep., Ex. 2 at 101:12-103:20; 107:22-108:4; 110:12-111:3.  Soon afterward, Bear Stearns sold, transferred, assigned, granted and conveyed all of its interest in the $73 million note via sub-participation agreements, $57 million to The Baupost Group Securities, L.L.C. ("Baupost") and $16 million to King Street Capital, L.P. ("King Street").  It did the same regarding the $41 million note, with $32 million to Baupost and $9 million to King Street.  Thus Baupost and King Street acquired all the economic rights under the notes, and

Prudential deferred first to Bear Stearns and afterward to Baupost, which also spoke for King Street, as the owners of the notes when Prudential acted to protect those rights under the Notes, including in Enron's bankruptcy proceedings.  Plaintiffs state that after Baupost and King Street purchased the notes, Baupost and King Street were effectively, or at least beneficially, the owners of the notes.  Moreover, after Enron waived its first offer by letter agreements dated October 25, 2004, and no objections were filed to that waiver,[7] and with approval of the bankruptcy court on December 2, 2004, the notes were elevated directly into the names of Baupost and King Street on Enron's books, effective as of December 12, 2004.  See generally Ex. 1, Affidavit of Baupost's attorney David Evans; Ex. 4, Dep. of Henry S. Wagner, III of Baupost.

Plaintiffs state that for business purposes and as customary with hedge funds, Baupost and King Street did not want to file this lawsuit in their own names, so after asking Prudential to file this action and receiving a rejection, Baupost created two special single-purpose entities, Plaintiffs here (Ravenswood I and Ravenswood II, collectively "Ravenswood"), to prosecute the suit

---

[7] On November 11, 2004 Enron filed Debtors' Seventh Omnibus Motion for Approval of Compromise and Settlement of Claims Pursuant to Federal Rule of Bankruptcy Procedure 9019, to which the letter agreements of October 25, 2001 were attached, in the bankruptcy Court.  No objections to the agreements were filed, and the bankruptcy court approved them On December 2, 2004.  That approval became effective on December 12, 2004 when appeal or reconsideration of that order could no longer be filed.

directly.    Evans  Affid.,  Ex.  1.    Baupost  and  King  Street
transferred  their  interests  in  the  Notes  to  Ravenswood  and
Whitewood[8] in November 2004.

About  two  and  a  half  months  after  the  filing  of  this  lawsuit
on  November  30,  2004,  during  which  Plaintiffs  held  100%  of  the
Seller's  Rights  in  the  notes,  on  February  18,  2005  Prudential
delivered  the  Notes  to  Bear  Stearns  together  with  an  Irrevocable
Bond  Power  endorsing  the  notes  to  Bear  Stearns.    Kob  Dep.,  Ex.  2,
111:23-112:25.    That  same  day  Bear  Stearns  delivered  Allonge
Endorsements  and  the  notes  to  Plaintiffs,  which  elevated  the  Notes
into  the  names  of  Plaintiffs,  completing  all  technical  and
ministerial  acts  necessary  to  do  so.

Key  to  justifying  their  filing  suit  late  in  November  2004  and
evidencing  their  good  faith  is  Plaintiffs'  counsel's  legal  research
prior  to  filing  this  action,  which  convinced  counsel  that
assignment  of  the  title  of  the  notes  was  not  required  to  bring  this
suit  because  100%  of  the  rights  under  the  notes  and  the  right  to
bring  this  action  had  been  effectively  purchased  and  paid  for  three
years  before.    Furthermore,  the  assignments  on  February  18,  2005
were  completed  before  discovery  began  in  the  consolidated  *Newby*

---

[8] In his deposition (Ex. 3 at 28:5-30:10)) David Fitton, a
Senior Financial Analyst/Senior VP with King Street, explains that
in what is a common practice, Whitewood is a special purpose entity
created to hold King Street's investments in the Enron Prudential
notes and to pursue litigation regarding them.

action, H-01-3624, MDL 1446.  *See generally* Affid. of Andrew Mytelka, Ex. 5.

"A party that predicates its legal claim on a controversial and unsettled legal theory should not face sanctions" under § 1927. *Procter and Gamble*, 280 F.3d at 531-32.  In *Dubuque Stone Products Co. v. Fred L. Gray Co.*, 356 F.2d 718, 723-24 (8th Cir. 1966)(holding that an assignment after the initiation of a lawsuit is not invalid and satisfies Rule 17(a)), the Eighth Circuit found that even though an assignment of an insurance contract from the insurer to the agent occurred after the suit was filed, but before the trial, the defendant suffered no prejudice because it did not lose the right to assert any defenses against the plaintiff;  the court therefore concluded that the assignment was not invalid and assignee is the real party in interest.[9]  Two district courts in the Fifth Circuit have followed *Dubuque*.  Judge Nancy Atlas in *The Decorative Center of Houston, L.P. v. Direct Response Publications, Inc.*, 264 F. Supp. 2d 535, 543-44 (S.D. Tex. 2003), found that the plaintiff had standing to bring suit and was the real party in interest even though the assignment of the rights under the

---

[9] *In accord, Kilbourn v. Western Surety Co.*, 187 F.2d 567, 571 (10th Cir. 1951)(under Colorado law the assignee is thereafter the real party in interest even though the written assignment was not made until after the action was commenced; under the Federal Rules he became the real party in interest when the written assignment was made and the Rules were liberalized to be more speedy and achieve a complete adjudication of a controversy without regard to technicalities and mere formal technical rules).

contract providing the basis of the suit was not made until over one year after the filing of the litigation.  The court emphasized that the assignment "occurred after filing, but before trial, and Dubuque suffered no prejudice therefrom" because it "did not cause Dubuque to lose the right to assert, against [assignee] Gray, any defenses it could have asserted against" the original party to the joint venture agreement.  *Id.* at 724.  In *Lehman Brothers Holdings, Inc. v. Cornerstone Mortg. Co.*, Civil A. No. H-09-0672, *11 (S.D. Tex. Feb. 10, 2011), Judge Lee Rosenthal, citing *Dubuque* and *Decorative Center, inter alia*, recognized that courts have held that "a party may assert claims based on rights assigned after the filing of a lawsuit asserting those rights or after a pleading asserting those rights, provided that there is no unfair prejudice."  *See also* 6A Charles Alan Wright, Arthur Miller, Mary Kay Kane, *Federal Practice and Procedure Civil* § 1545 (3d ed. Database updated April 2013)("[I]t has been held that even when a claim is not assigned until after the action has been instituted, the assignee is the real party in interest and can maintain the action.")(and cases cited therein).

In its Opinion and Order of November 29, 2011 (#64), this Court chose to follow the Fifth Circuit's opinion in *Wieburg*, rather than *Dubuque* and progeny.  In *Wieburg*, the Fifth Circuit opined that "most courts have interpreted the last sentence of Rule 17(a) to be applicable only when the plaintiff brought the action

in her own name *as a result of an understandable mistake*, *because the determination of the correct party to bring the action is difficult*."  272 F.3d at 308 (emphasis added by this Court).  The panel relied on the Advisory Committee Notes to the 1966 Amendment of Rule 17 (citations omitted):

> This provision keeps pace with the law as it is actually developing.  Modern decisions are inclined to be lenient when an honest mistake has been made in choosing the party in whose name the action is to be filed—in both maritime and nonmaritime case. . . . . This provision should not be misunderstood or distorted.  It is intended to prevent forfeiture when determination of the proper party to sue is difficult or when an understandable mistake has been made.

Subsequently in the same case, in *Wieburg v. GTE Southwest, Inc.*, 71 Fed. Appx. 440 (Table), No. 02-11217, 2003 WL 21417074, *2 (5th Cir. June 2, 2003), the Fifth Circuit repeated this rule and stated, "To avoid dismissal, therefore, a plaintiff who is not the real party in interest must show, first, that he sued in his own name based on an understandable mistake and, second, that he did not have a reasonable time to correct the pleading deficiency."  Here there was no "understandable mistake" as Plaintiffs knew all along that they did not own the note at the time they filed suit and they knew who did.

Nevertheless, as it indicated in that Opinion and Order, the Court agrees with Plaintiffs that the law was, and is, uncertain, as evidenced by *Dubuque* and progeny.  *See also, e.g., Esposito v. U.S.*, 368 F. 3d 1271, 1275-76 (10th Cir. 2004)("In this circuit .

. . we have never required a plaintiff seeking substitution to show that his mistake was 'understandable' in addition to being 'honest.'  Instead, our cases focus primarily on whether the plaintiff engaged in deliberate tactical maneuvering (i.e. whether his mistake was 'honest'), and on whether the defendant was prejudiced thereby."); *Jenkins v. Wright and Ferguson Funeral Home*, 215 F.R.D. 518, 522 & n.4 (S.D. Miss. 2003)(The Advisory Committee Note is "in apparent conflict with the Rule itself.  Rule 17(a) clearly allows one who is not a real party in interest to prosecute a case upon ratification by the real party in interest.  Contrary to the Advisory Committee Note, the language of Rule 17(a) does not state or even imply that the real party in interest must have been difficult to determine or that an understandable mistake has been made.").  Because of the conflicting interpretations, the Court finds that sanctions under § 1927 are not warranted.  *Procter and Gamble*, 280 F.3d at 531–32 ("A party that predicates its legal claim on a controversial and unsettled legal theory should not face sanctions" under § 1927.).

Furthermore, for the same reason, the Court finds that Plaintiffs did not abuse the judicial system or defraud the Court, and therefore sanctions pursuant to the Court's inherent power are also not warranted.

Accordingly, the Court

-17-

ORDERS that Deutsche Bank's motion for attorneys' fees, expenses, and costs under 28 U.S.C. § 1927 and the Court's inherent powers (instrument #65) is DENIED.

**SIGNED** at Houston, Texas, this __16th__ day of __May__ , 2013.

_____
MELINDA HARMON
UNITED STATES DISTRICT JUDGE